**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 11a0215n.06**

**Nos. 08-1266 and 09-1219**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| ALEX ZAKHARIA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | **FILED** |
| | ) | **Apr 06, 2011** |
| | ) | LEONARD GREEN, Clerk |

BEFORE: GUY, MOORE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Alex Zakharia pled guilty pursuant to a Rule 11 plea agreement to one count of misdemeanor contempt of court, in violation of 18 U.S.C. § 401(1), for lying under oath while testifying as an expert witness in a medical malpractice case. The district court sentenced Zakharia to one year of probation, levied a fine of $100,000.00, and also required that he pay costs of $10,605.54, along with restitution.

In these consolidated appeals, Zakharia appeals (Case No. 08-1266) the fines and costs imposed as a part of his sentence, asserting, inter alia, that because the combined amount of fines and costs exceeds the $100,000 maximum fine stipulated by the plea agreement, the costs portion of the sentence should be vacated. We agree and, therefore, vacate the excessive sentence and

remand the case to the district court for re-sentencing in accordance with this opinion. We affirm in all other respects.

Zakharia separately appeals (Case No. 09-1219) the district court's post-judgment order holding him in civil contempt for violating the terms of his plea agreement. The government has moved to dismiss the appeal as moot because Zakharia purged the contempt by complying with the court's order, with no resultant sanctions. We conclude that no live controversy remains regarding the contempt adjudication and, therefore, grant the government's motion and dismiss the appeal.

I.

Alex Zakharia is a Florida cardiothoracic surgeon who, pursuant to a Rule 11 plea agreement, pled guilty to one count of misdemeanor contempt of court, in violation of 18 U.S.C. § 401(1). His conviction stems from charges that he falsely held himself out to be an expert witness in several medical malpractice lawsuits involving coronary artery bypass grafts ("CABGs"). In order to establish his legitimacy as an expert, Zakharia testified during these lawsuits that he regularly performed CABGs as part of his own medical practice. However, in 2002, during the course of a malpractice action in Michigan (the "*Rodgers* litigation"), an attorney obtained medical records which established that, contrary to Zakharia's sworn deposition testimony, he had not performed any CABGs for at least five years.

In November 2006, on the basis of Zakharia's false testimony in the *Rodgers* litigation, and his use of the mails and interstate wire communications to fraudulently collect expert-witness fees in another malpractice action in Michigan (the "*McCatty* litigation"), a grand jury indicted Zakharia

on seven felony counts of mail and wire fraud, and one felony count of making false declarations under oath.

Negotiations between the parties resulted in the government filing a superseding information charging Zakharia with one count of misdemeanor contempt of court, a Class A misdemeanor, in violation of 18 U.S.C. § 401(1). On September 18, 2007, Zakharia and the government executed a Rule 11 plea agreement,[1] whereby he pled guilty to the superseding information and the government agreed to dismiss all of the pending felony charges, in exchange for certain actions on Zakharia's part. The plea agreement provided that

> [n]ot later than the date of sentencing or December 31, 2007, whichever comes first, defendant will retire from the practice of medicine, according to the terms of a letter agreement between the parties dated September 17, 2007. The parties agree that if defendant violates the terms of the letter agreement, the government may withdraw from this agreement and reinstate the charges which are currently pending against defendant, notwithstanding the expiration of any statute of limitations, and notwithstanding any other constitutional or statutory argument defendant might have to the effect that those charges are untimely.

> Defendant will draft and seek to publish a letter in a professional medical journal in which he acknowledges his offense and his responsibility for it, and the consequences of that offense to him and to the administration of justice. Both the letter and the choice of journal will be subject to the approval of the government.[2]

---

[1]Federal Rule of Criminal Procedure 11.

[2]By mutual agreement of the parties, the date that Zakharia was to give up his license was extended to January 8, 2008.

In turn, the government promised to recommend a downward departure to a Guidelines range of 0 - 6 months in custody. However, under the terms of the plea agreement, the district court was not bound by either party's sentencing recommendations.

Part 3 of the plea agreement provided that the maximum custodial sentence "may not exceed one year[,]" but "[t]here is no agreement as to fines." However, the caption on the first page of the plea agreement listed a maximum fine of $100,000, consistent with the statutory maximum fine for a Class A misdemeanor. The agreement further stated that "[i]f the sentence imposed does not exceed the maximum allowed by Part 3 of this agreement, defendant waives any right he has to appeal his conviction or sentence." Zakharia was allowed to withdraw from the plea agreement and his guilty plea only if the district court "impose[d] a sentence higher than the maximum allowed by Part 3."

The requirement that Zakharia forfeit his license and quit the practice of medicine was set forth in a side letter referred to, and incorporated in, the plea agreement. The side letter was signed by the parties and stated in relevant part: "The undersigned agree that in exchange for the government's entering in a Rule 11 plea agreement this date with [Defendant], [Defendant] will forfeit his license to practice medicine and will cease completely the practice of medicine." At his guilty plea hearing, Zakharia confirmed for the district court his acceptance of the terms of the plea agreement, and his sentencing was set for mid-February 2008.

In the interim, between Zakharia's guilty plea and his sentencing, the government sent him a document titled "Voluntary Relinquishment of License" for his signature. Under the terms of the

Voluntary Relinquishment, Zakharia agreed to surrender his Florida medical license, voluntarily and immediately cease the practice of medicine, and never re-apply for a medical license in the state of Florida. However, as of early February 2008, Zakharia still had not executed the Voluntary Relinquishment, which the government intended to submit to the Florida Department of Health for its disciplinary proceedings against Zakharia. In fact, defense counsel advised the government that Zakharia did not intend to comply with this provision of the plea agreement. Consequently, the government filed a motion for specific performance, or in the alternative, to set aside the guilty plea. In his response to the motion, Zakharia cited a shortage of thoracic surgeons in his locale and requested that the court excise the license forfeiture requirement from the plea agreement.

At the February 12, 2008, sentencing hearing, the district court accepted the plea agreement and denied Zakharia's request to modify it, finding that Zakharia had violated its terms by his refusal to leave the practice of medicine. The court ordered him to comply immediately or be held in civil contempt and incarcerated until he did comply. After a brief recess to confer with his attorneys, Zakharia tendered the signed Voluntary Relinquishment to the court, which withdrew its threat of contempt and proceeded with sentencing Zakharia.

The presentence investigation report ("PSR") scored Zakharia's Guidelines range as 0 - 6 months of imprisonment, based upon a total offense level of 6 and a criminal history category of I. The PSR noted that the Class A misdemeanor maximum fine was $100,000, with an advisory Guidelines range of $500 to $5,000. The parties agreed to the PSR's Guidelines calculations. The court sentenced Zakharia to a one-year term of probation, with the first thirty days in custody in a

halfway house, ordered restitution in the agreed-upon amounts of $6,000 and $10,480, imposed a fine of $100,000, and assessed costs in the amount of $10,605.54. The costs were associated with Zakharia's confinement in the community corrections center and his supervision while on probation.

Following the entry of judgment, the government forwarded the Voluntary Relinquishment to the Florida Department of Health Board of Medicine (the "Board"), which brought an administrative complaint against Zakharia and scheduled a license revocation hearing for April 4, 2008. Had the hearing proceeded as scheduled, the Board would have accepted the Voluntary Relinquishment and terminated Zakharia's medical license. However, on April 2, 2008, Zakharia withdrew the Voluntary Relinquishment from the Florida disciplinary proceedings and, without authorization from the district court, substituted a different document – his own version of a voluntary relinquishment of license – that had been rejected previously by the government as inconsistent with the plea agreement because it would not ban permanently the reinstatement of his license. In other words, Zakharia performed what the district court accurately described as a "switcheroo." On April 4, 2008, counsel for Zakharia appeared before the Board and confirmed that Zakharia was withdrawing the original Voluntary Relinquishment prepared by the government, which he had tendered at his sentencing hearing.

On May 22, 2008, the Medicare program notified Zakharia that it was revoking his ability to be reimbursed by Medicare, based on his plea of guilty to the charges in this case.

The government brought Zakharia's actions in the Florida disciplinary proceedings to the attention of the district court by filing a renewed motion for specific performance of the plea

agreement and a motion to extend probation. At a hearing on February 10, 2009, the district court determined that Zakharia breached the plea agreement by unilaterally and surreptitiously withdrawing the original Voluntary Relinquishment from the Board proceedings. The court ordered Zakharia to reinstate the original forfeiture by February 13, 2009, or face civil contempt sanctions, including incarceration. The district court issued a contempt order and granted the government's renewed motion for specific performance of the plea agreement. At the government's request, the court issued a separate order extending Zakharia's term of probation, which was set to expire in two days, by an additional six months.

Zakharia complied with the court's order by resubmitting the original Voluntary Relinquishment to the Board before the February 13th deadline. In light of his compliance, the district court did not levy any contempt sanctions.

In separately filed appeals that have been consolidated for our review, Zakharia challenges his sentence and the February 10, 2009, order of contempt issued by the district court.

II.

Zakharia appeals the $100,000 fine and $10,605.54 in costs imposed as part of his sentence, but not his term of probation or payment of restitution. He raises four issues regarding the pecuniary portion of his sentence, arguing that: (1) to the extent the combined amount of the fines and costs exceeds the maximum fine of $100,000, his sentence is unlawful or, alternatively, violates the terms of the plea agreement, and the assessment of costs must be vacated; (2) the costs were imposed without notice and an opportunity to be heard in violation of his right to procedural due process; (3)

the $100,000 fine violates the Eighth Amendment's prohibition against excessive fines; and (4) the $100,000 fine is procedurally and substantively unreasonable.

As a preliminary matter, the record shows that Zakharia did not challenge the imposition of the fine or the assessment of costs in the district court. Ordinarily, if the district court asks the parties whether there are any objections to the sentence which were not previously raised, as required by *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), and the affected party does not object, then review on appeal is limited only to plain error. *United States v. Graham*, 622 F.3d 445, 455 (6th Cir. 2010); *United States v. Wettstain*, 618 F.3d 577, 592 (6th Cir. 2010).

However, where, as here, the district court did not satisfy its duty of inquiry under *Bostic* by clearly asking the parties whether they had further objections to the sentence following its pronouncement, and instead merely asked in a cursory manner if there was "[a]nything further[,]" the *Bostic* inquiry is deficient, as the government admits. Consequently, Zakharia's failure to raise the objection does not restrict our review to a plain-error analysis. *Wettstain*, 618 F.3d at 592-93; *United States v. Thomas*, 498 F.3d 336, 340 (6th Cir. 2007); *United States v. Clark*, 469 F.3d 568, 570-71 (6th Cir. 2006).

### III.

With regard to Zakharia's first claim, the government concedes error. It acknowledges that because the assessment of any costs of probation and community corrections are properly considered to be components of a fine, the total amount of combined costs and fines cannot exceed the maximum fine provided by statute or, in this case, by the plea agreement. Therefore, the district

court erred when it sentenced Zakharia to pay $10,605.54 in costs in addition to the $100,000 fine

and, in doing so, exceeded the $100,000 maximum fine agreed upon by the parties.

The offense of misdemeanor contempt of court, 18 U.S.C. § 401(1), is unique in that it

carries no maximum penalty, either with regard to fines or imprisonment; instead, it provides that

a court "shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt

of its authority . . . ." 18 U.S.C. § 401(1); *United States v. Carpenter*, 91 F.3d 1282, 1283 (6th Cir.

1996). Thus, the penalty actually imposed determines the seriousness of the offense. *Bloom v.*

*Illinois*, 391 U.S. 194, 211 (1968); *Musidor, B.V. v. Great Am. Screen*, 658 F.2d 60, 66 (2d Cir.

1981). However, there is no dispute that the parties in the instant case contemplated, the plea

agreement provided, and the PSR reflected, that Zakharia's crime would be treated as a Class A

misdemeanor, which carries a maximum fine of $100,000 and a maximum term of imprisonment

of one year. *See* 18 U.S.C. §§ 3559(a)(6), 3571(b)(5).

The assessment of any costs of probation and confinement are now an inherent part of a fine.

As one court has explained, "In 1997, the guidelines were amended so that costs of supervision or

imprisonment would no longer be assessed in isolation from the defendant's punitive fine. As

reflected in the revised guideline, § 5E1.2(d)(7), costs of imprisonment and supervision are now

supposed to be one among several factors considered in determining the defendant's fine." *United*

*States v. Mordini*, 366 F.3d 93, 94 (2d Cir. 2004) (citing U.S.S.G., app. C, vol. 1, amend. 572, at

539-40).[3]  *See also* 18 U.S.C. § 3572(a)(6) ("In determining whether to impose a fine, and the amount, . . . the court shall consider, in addition to the factors set forth in [18 U.S.C. §] 3553(a) – . . . the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence[.]").

A sentence that exceeds a statutory maximum is unlawful, and, in such instances, we will vacate the excessive sentence and remand for resentencing.  *Wettstain*, 618 F.3d at 592-93; *United States v. Penson*, 526 F.3d 331, 336 (6th Cir. 2008); *United States v. Jones*, 489 F.3d 243, 253-54, 256 (6th Cir. 2007); *United States v. Sims*, 975 F.2d 1225, 1241 (6th Cir. 1992).  Here, regardless of whether we characterize the combined total of the fines and costs as unlawful because it exceeds the statutory maximum fine for Class A misdemeanors (as Zakharia argues) or, given the peculiar nature of the misdemeanor contempt statute, as a violation of Federal Rule of Criminal Procedure 11(c) because the district court effectively rejected the plea agreement without explanation by imposing a fine greater than the maximum agreed upon by the parties (as the government argues), the district court erred when it required Zakharia to pay $10,605.54 in costs over and above the maximum $100,000 fine that it also levied.  The result is the same – we must vacate the excessive sentence and remand for re-sentencing.[4]

_____

[3]U.S.S.G. § 5E1.2(d)(7) (2007) provides that "[i]n determining the amount of the fine, the court shall consider: . . . the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed[.]"

[4]Our determination eliminates the need to address Zakharia's argument that the imposition of costs without notice and an opportunity to be heard violated his due process rights.

IV.

Zakharia's remaining challenges to his sentence bring to the fore the issue of waiver. The government asserts that pursuant to the appeal waiver provisions of the plea agreement, Zakharia is foreclosed from raising these issues in this court.

"We review the question of whether a defendant waived his right to appeal his sentence in a valid plea agreement *de novo*." *United States v. Jones*, 569 F.3d 569, 571-72 (6th Cir. 2009) (citation and internal quotation marks omitted). "'[P]lea agreements are to be interpreted strictly, with ambiguities construed against the government.'" *Id*. at 572 (quoting *United States v. Caruthers*, 458 F.3d 459, 470 (6th Cir. 2006)).

"It is well settled that a defendant in a criminal case may waive his right to appeal his sentence in a valid plea agreement." *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003). Indeed, a defendant "may waive any right, even a constitutional right, by means of a plea agreement." *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004) (citation and internal quotation marks omitted). However, "[a] waiver of appeal rights may be challenged on the grounds that it was not knowing and voluntary, was not taken in compliance with Fed. R. Crim. P. 11, or was the product of ineffective assistance of counsel." *United States v. Atkinson*, 354 F. App'x 250, 252 (6th Cir. 2009) (unpublished) (citing *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007)). In addition, an appellate waiver in a plea agreement does not preclude a claim that the statutory maximum sentence has been exceeded. *Id*. (citing *Caruthers*, 458 F.3d at 472); *United States v. McKinney*, 273 F. App'x 514, 516 (6th Cir. 2008) (unpublished). "For a plea agreement to be constitutionally valid,

a defendant must have entered into the agreement knowingly and voluntarily." *Smith*, 344 F.3d at 483.

The government contends that the plain language of the plea agreement establishes that Zakharia has waived his right to appeal any fine less than or equal to $100,000, reasoning as follows:

> [Part 7] of defendant's plea agreement provided that if defendant's sentence did not exceed the maximum permitted by [Part 3], defendant waived any appeal of his conviction or sentence. By its terms, [Part 3] placed *no* limit on the amount of the fine – [Part] 3(d) stated explicitly that the parties had entered into no agreement as to the fine. Therefore, the only limit on the fine was contained in the plea agreement's heading, which clearly noted that the maximum fine was $100,000. Since [Part 3] set no maximum fine, the language of [Part 7] plainly stated that defendant waived any appeal of any fine up to the $100,000 maximum set by the plea agreement.
>
> * * *
>
> Defendant executed a global waiver of all rights to appeal, both as to his conviction and his sentence. So long as the invalidating condition did not occur (i.e. a sentence that exceeded one year), defendant waived all appellate rights, without limitation. This includes any challenge to the amount of the fine.

(Footnotes and citations omitted.)

Zakharia, in turn, maintains that because the plea agreement specifically states that "[t]here is no agreement as to fines[,]" he has not waived the right to challenge on appeal the fines and costs imposed by the district court.

"[A] plea agreement is 'ambiguous if it is capable of more than one reasonable interpretation.'" *United States v. Debreczeny*, 69 F. App'x 702, 706 (6th Cir. 2003) (unpublished) (quoting *United States v. Gebbie*, 294 F.3d 540, 551 (3d Cir. 2002)); *see also Jones*, 569 F.3d at 572-73 (holding that provision in appeal waiver that the defendant "'waive[d] the right to appeal any

sentence which is at or below the maximum of the guideline range as determined by the Court,'" but "'retaine[d] the right to appeal a sentence above the guideline range[,]'" was ambiguous and permitted appellate review of sentence) (alterations in original); *Smith*, 344 F.3d at 483 (finding plea agreement to be ambiguous as to the amount and manner of determining restitution and, therefore, the defendant's appeal was not waived).

In the present case, Part 7 of the plea agreement provides that if the sentence imposed did not exceed the maximum allowed by Part 3, Zakharia waived his right to appeal his conviction and sentence. However, Part 3 specifies a maximum only for a custodial sentence and expressly states that there is no agreement as to fines. The only mention of a maximum fine is in the caption of the plea agreement. Thus, while the government's contention that Zakharia waived his right to appellate review so long as his sentence did not exceed one year in custody is a reasonable reading, Zakharia's contrary interpretation is equally viable. This ambiguity requires that we give the benefit of the doubt to Zakharia, *Jones*, 569 F.3d at 572, and we therefore conclude that he has not waived his right to appeal the $100,000 fine.

V.

Zakharia's claim that his $100,000 fine is excessive in violation of the Eighth Amendment presents a question of law which, because of the *Bostic* infirmity, we review de novo. *Graham*, 622 F.3d at 452; *Jones*, 569 F.3d at 573. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. We adhere to the "narrow proportionality principle" announced in *Harmelin*

v. Michigan, 501 U.S. 957, 996-1009 (1991) (Kennedy, J., concurring). *United States v. Hughes*, 632 F.3d 956, 959 (6th Cir. 2011); *Graham*, 622 F.3d at 452-53; *Jones*, 569 F.3d at 573. "Under this approach, there is no requirement of strict proportionality; the [E]ighth [A]mendment is offended only by an extreme disparity between crime and sentence." *Jones*, 569 F.3d at 573 (citation and internal quotation marks omitted). "A defendant challenging his sentence under the Eighth Amendment has a tremendously difficult burden to meet." *Hughes*, 632 F.3d at 959.

Specifically, with regard to fines, "'[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the [fine] must bear some relationship to the gravity of the offense that it is designed to punish.'" *United States v. Madison*, 226 F. App'x 535, 548 (6th Cir. 2007) (unpublished) (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). A punitive fine violates the Excessive Fines Clause if it is "grossly disproportional" to the gravity of the offense. *Bajakajian*, 524 U.S. at 334; *United States v. Blackwell*, 459 F.3d 739, 771 (6th Cir. 2006). Relevant factors to consider include the nature of the offense and its relation to other criminal activity, the potential fine under the advisory Guidelines range, the maximum sentence and fine that could have been imposed, and the harm caused by the defendant's conduct. *United States v. Varrone*, 554 F.3d 327, 331 (2d Cir. 2009); *United States v. Ely*, 468 F.3d 399, 403 (6th Cir. 2006); *United States v. Bollin*, 264 F.3d 391, 417-18 (4th Cir. 2001).

Citing these factors, Zakharia contends that the imposition of the maximum fine is grossly disproportionate to the gravity of his misdemeanor offense – this was a Class A misdemeanor causing no physical harm or danger; the actual offense conduct was his misrepresentation of his

credentials on two occasions and was not related to any other illegality; and the harm caused by his conduct was remedied by his payment of restitution to the plaintiffs in the affected malpractice lawsuits. Zakharia maintains that his advisory Guidelines range of 0 - 6 months of confinement was modest, and, although the district court could have imposed a sentence of up to one year of imprisonment or five years of probation, it imposed a sanction of one year of probation with the first thirty days in community confinement, which was indicative of the minimal gravity of his offense. By contrast, according to Zakharia, the imposition of the maximum fine of $100,000, which was twenty times greater than the $5,000 upper end of the Guidelines range, was grossly disproportionate to the gravity of this misdemeanor offense.

Viewed in the context of his plea bargain, we could not disagree more with Zakharia. As even his attorney acknowledged during the sentencing, this was a serious offense and its ramifications were not trivial. In his guilty plea, Zakharia admitted that he lied under oath about his expertise in the area of medicine, for which he had been paid to express an opinion. In doing so, he gravely undermined the judicial process and caused significant harm to the plaintiffs and attorneys in the malpractice lawsuits who relied on him. Although Zakharia's sentence required that he pay approximately $16,000 in restitution for certain litigation costs that were incurred by these parties, this did not rectify the numerous harmful consequences of his actions. The plaintiff in the *McCatty* litigation dismissed his lawsuit, and the defendant incurred costly legal expenses. In the *Rodgers* litigation, the government, which was defending the surgeon who was accused of malpractice, spent

considerable time and effort investigating Zakharia's misrepresentations about his credentials that surfaced during his deposition and addressing the impact on the lawsuit.

Moreover, the imposition of the $100,000 fine cannot be viewed in a vacuum. It must be considered in the context of the plea bargain that Zakharia struck with the government. Indeed, we would be remiss if we did not note that Zakharia's current claim rings hollow in light of his stance at the sentencing hearing, when he and his attorneys suggested to the district court that, in lieu of going to prison, he would be willing "to pay whatever fine the Court orders without limitation. He recognizes what the guideline range is, but he's willing to make a fine payment far in excess of that if the Court deems it appropriate." In essence, Zakharia invited the district court to "bring it on" with regard to the fine as a quid pro quo for the avoidance of incarceration. The district court evidently took him at his word when it sentenced him to a fraction of the custodial time called for by the Guidelines, but imposed a greater financial penalty.

"Plea agreements are contractual in nature, and as such, courts are guided by general principles of contract interpretation when construing plea agreements." *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007); *see also United States v. Harris*, 473 F.3d 222, 225 (6th Cir. 2006) ("Plea agreements are contractual in nature, so we use traditional contract law principles in interpreting and enforcing them."). "Plea agreements are to be enforced according to their terms" to ensure that both parties receive the benefit of the bargain. *Moncivais*, 492 F.3d at 662; *see also United States v. Wesley*, 13 F. App'x 257, 259 (6th Cir. 2001) (unpublished) ("Plea agreements are subject to an analysis of the rights and duties of the parties similar to the law of contracts. Each party

should receive the benefit of his bargain."). Here, Zakharia received the benefits of his contractual bargain. He was permitted to plead guilty to one count of misdemeanor contempt of court, in exchange for the dismissal of eight felony counts and his agreement to give up his medical license. Viewing the totality of the circumstances, in which the fine is but one component of the sentencing equation, we conclude that Zakharia has not met his "tremendously difficult burden" of showing that the $100,000 fine was grossly disproportionate to the gravity of the offense. *Hughes*, 632 F.3d at 959.

VI.

Zakharia also contends that the imposition of the maximum fine of $100,000 was procedurally and substantively unreasonable. Because the district court did not make the requisite *Bostic* inquiry, we will analyze the procedural reasonableness of Zakharia's sentence, as well as its substantive reasonableness, under the abuse-of-discretion standard. *United States v. Brooks*, 628 F.3d 791, 796-97 (6th Cir. 2011); *Penson*, 526 F.3d at 337.

"Procedural reasonableness requires that a district court must properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence – including an explanation for any variance from the guidelines range." *United States v. Lanning*, — F.3d — , 2011 WL 309650, at *4 (6th Cir. 2011) (citation omitted). "Although the district court need not explicitly reference each of the § 3553(a) factors, there must be sufficient evidence in the record to affirmatively demonstrate that the court gave each of them consideration." *Brooks*, 628 F.3d at 796 (citation and internal quotation marks omitted). For

sentencing purposes, "'[t]he appropriateness of brevity or length, conciseness or detail, . . . depends upon circumstances' that are left 'to the judge's own professional judgment.'" *Id.* (alterations in original) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

If the sentence is deemed to be procedurally sound, we must then ascertain whether it is substantively reasonable, taking into account the totality of the circumstances. *Id.* "The sentence may be substantively unreasonable if the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor." *Id.* We must accord due deference to the district court's determination that the § 3553(a) factors justify a variance. *Lanning*, 2011 WL 309650 at *4.

From a procedural standpoint, Zakharia argues that the district court imposed the $100,000 fine without mentioning the advisory Guidelines range of $500 to $5,000, or explaining why a fine within that range was inadequate under the circumstances and, conversely, why the maximum fine was warranted. He further asserts that the fine was substantively unreasonable because it is unduly harsh punishment for a first offender, and the district court imposed it arbitrarily, with no rationale as to why the maximum fine was sufficient but not greater than necessary. We disagree with his contentions.

In determining whether and to what extent to impose a fine, the district court must consider not only the § 3553(a) factors, but also the fine-specific factors set forth in 18 U.S.C. §§ 3571 and 3572, and U.S.S.G. § 5E1.2(d), which include the need to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence; the

defendant's income, earning capacity, and financial resources; the burden on the defendant and his financial dependents; any pecuniary loss inflicted upon others as a result of the offense; whether restitution is ordered and the amount of such restitution; and the need to deprive the defendant of illegally obtained gains from the offense. *United States v. Woods*, 367 F. App'x 607, 613 (6th Cir. 2010) (unpublished) (citing *United States v. Tosca*, 18 F.3d 1352, 1354 (6th Cir. 1994)).

Here, although the district court's explanation was brief and imperfect, the overall "context and the record" of the sentencing hearing, *Rita*, 551 U.S. at 359, indicate that the court properly calculated the Guidelines range, treated the Guidelines as advisory, considered the appropriate sentencing factors, and adequately explained the chosen sentence. Citing § 3553(a), the district court looked at the nature and circumstances of the offense and "consider[ed] it serious because it's an offense that deals with the functioning of the court, the truthfulness and the procedures, the depositions which in a federal case are part and parcel of matters involving the court." Against this backdrop, the court identified the sentencing question as "the need for the sentence to reflect the seriousness of the offense, promote respect for the law and provide just punishment, [and] afford adequate deterrence to others who may be considering similar behavior." Imposing a significant economic penalty on this particular defendant was a useful way to deter other experts who might be tempted to lie in order to reap the substantial financial rewards they can accrue through their own false testimony.

Although the district court made no express findings regarding Zakharia's ability to pay, the record reflects that the district court was familiar with Zakharia's personal circumstances. The PSR

noted that Zakharia is a very wealthy surgeon with a net worth exceeding $11 million. Here, as in *Woods*, "there was sufficient indicia of the court's consideration of [Zakharia's] ability to pay such that the district court did not abuse its discretion in imposing the fine, especially because [Zakharia] did not request more specific findings in the district court . . . ." *Woods*, 367 F. App'x at 614. A fine that would be considered punitive by an individual of average wealth is not similarly punitive to a person with more than $11 million. The $100,000 fine, less than one percent of Zakharia's net worth, was a reasonable and effective means of punishing Zakharia, particularly when balanced against the light custodial sentence that he received.

Moreover, the colloquy at the sentencing hearing clearly contradicts any claim that Zakharia was unaware that a fine of such magnitude was contemplated. The present circumstances are therefore distinguishable from *United States v. Elfgeeh*, 515 F.3d 100, 136-37 (2d Cir. 2008) (holding that the district court committed plain error in imposing a fine of more than double the maximum recommended by the Guidelines without advance notice to the defendant or an opportunity to present evidence as to his ability to pay, and without an explanation for the deviation from the Guidelines), and *United States v. Wood*, 384 F. App'x 698, 712 (10th Cir. 2010) (unpublished) (holding that the district court committed plain error in imposing a $250,000 fine, twice the advisory Guidelines' maximum amount, where "the district court gave no explanation of its variance from the Guidelines maximum, apparently because it mistakenly believed that the fine was within the Guidelines[,]" and the defendant's financial profile indicated that he was unable to pay the fine).

Considering the record as a whole and the circumstances of the plea bargain, we are satisfied that the district court "considered the parties' arguments and ha[d] a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 551 U.S. at 356. The court rendered a sentence that was sufficient, but not greater than necessary, to comply with the sentencing purposes of § 3553(a). "Proper sentencing requires reasonable sentences, not simply the invocation of 'magic words' by the sentencing court." *United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007). "[O]ur application of *Booker* and the sentencing factors of § 3553 holds to the principle that the perfect should not be the enemy of the good. In reviewing challenges to the reasonableness of a sentence, we seek a sufficient decisional approach by the sentencing court, not necessarily the most ideal, or a 'model' approach." *Id*. at 443. We discern no procedural or substantive unreasonableness in Zakharia's sentence.

## VII.

In the second of his consolidated appeals (Case No. 09-1219), Zakharia seeks to vacate the district court's February 10, 2009, order holding him in contempt of court. He contends that there was no factual basis for the government to posit, or the district court to conclude, that his execution of the Voluntary Relinquishment was part of his plea agreement. Zakharia maintains that he was entitled to forfeit his medical license by a method of his own choosing, and he complied with the plea agreement by voluntarily relinquishing his license to the Florida Department of Health in his own filing. Thus, according to Zakharia, the district court erred in finding that he violated the plea agreement and used the breach to hold him in contempt of court.

The government has filed a motion to dismiss the appeal as moot, arguing that Zakharia's compliance with the district court's order purged the contempt and, because Zakharia faces no continuing punishment and his legal rights have not otherwise been impacted by the finding of contempt, his challenge to the contempt order is moot. We agree.

This court "ha[s] no power to adjudicate disputes which are moot." *McPherson v. Mich. High School Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (citation and internal quotation marks omitted). "The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties[.]" *Id.* (citation and internal quotation marks omitted); *see also Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006) ("[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.") (citation and internal quotation marks omitted).

"In the context of purely coercive civil contempt, a contemnor's compliance with the district court's underlying order moots the contemnor's ability to challenge his contempt adjudication." *In re Grand Jury Subpoena Duces Tecum*, 955 F.2d 670, 672 (11th Cir. 1992). "'A long line of precedent holds that once a civil contempt order is purged, no live case or controversy remains for adjudication.'" *Id.* (quoting *In re Campbell*, 628 F.2d 1260, 1261 (9th Cir. 1980) (citing cases)); *see also SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003) (holding that the defendant's appeal of civil contempt order was moot where the defendant purged himself of the contempt by making the payments required by the court); *United States v. Paccione*, 964 F.2d 1269, 1274 (2d Cir. 1992) ("The district court found [the defendant] in civil contempt of its cease and desist order . . . . [and]

instructed him that he could purge himself by both paying the fine and furnishing the information required by the cease and desist order within ten days. Within the designated time period, [the defendant] complied and apparently purged himself. We conclude that his appeal from the order finding him in civil contempt is moot[.]"); *United States v. Tucker*, 817 F.2d 757, 1987 WL 35982, at *1 (6th Cir. May 6, 1987) (unpublished table decision) (holding that appeals were rendered moot by the appellant's compliance with the district court's contempt order, and "[a]s there is no case or controversy for this Court to address, it lacks jurisdiction to entertain [the] appeals"); *United States v. Griffin*, 816 F.2d 1, 7 n.4 (D.C. Cir. 1987) (holding that the defendant's appeal from the district court's decision holding him in civil contempt was rendered moot where the court imposed no sanctions because the contempt had been purged); *Port v. Heard*, 764 F.2d 423, 427 (5th Cir. 1985) ("It is clear enough that release of the [contemnors] from confinement would have mooted their petitions had confinement been the only sanction imposed, the contempt, in that case, being civil in nature."). *Cf. United States v. Hull*, 842 F.2d 333, 1988 WL 25038, at *1 (6th Cir. Mar. 22, 1988) (unpublished table decision) ("The general rule is that there is no right to appellate review of a civil contempt order until punishment is imposed.") (citations omitted).

Despite this on-point authority, Zakharia argues that as a direct result of the contempt adjudication, he has suffered collateral consequences which continue to affect his legal interests and, therefore, this court should entertain his appeal. However, these purported consequences do not create justiciable issues about the contempt order. *See In re Grand Jury Subpoena Duces Tecum*, 955 F.2d at 672 n.4 ("The controversy regarding contempt ended when [the contemnor] complied

with the district court's demands. We will not allow the [contemnor] to . . . appeal . . . alternative issues by pinning them to his appeal of a moot contempt adjudication.").

The district court's contemporaneous but separate order extending Zakharia's probation by six months at the behest of the government, albeit spurred by Zakharia's recalcitrance, was issued to ensure that he would not attempt to undermine the plea agreement again in the future, wholly apart from the contempt order's coercive mandate. The extension of probation, therefore, does not create a continuing legal interest which would be impacted by Zakharia's request that we vacate the order of contempt.

The additional collateral consequences of which Zakharia now complains – including Medicare's refusal to reimburse him for certain services to insured patients, his inability to work in any medical position and his expulsion from various prestigious medical societies, and his inability to defend himself in the disciplinary proceedings in light of the government's submission of the Voluntary Relinquishment to Florida authorities – are not byproducts of the contempt order, but of the plea agreement, which he knowingly executed, and his conviction. These consequences should have been evident to Zakharia when he entered into the agreement. Zakharia admits that "this appeal is primarily an appeal from the district court's determination that [he] breached his plea agreement, not the district court's choice of enforcement mechanism. If the Government's argument for dismissal prevails, the district court's underlying determination of breach is forever insulated from review."

In essence, through this appeal, Zakharia is trying to undo his plea agreement. The government's assessment of the current circumstances is accurate:

> [A]s of February 2009, the question before the district court was no longer whether the plea agreement required defendant to turn over the particular license forfeiture which the court had ordered him to provide. That train had long since left the station. The question was whether it was contemptuous for defendant to nullify the court's order. Having passed up every opportunity to use legitimate means to challenge the court's interpretation of the plea agreement at an appropriate time, defendant cannot now argue that the district court abused its discretion because it misinterpreted the plea agreement.

Zakharia's contention that a live case or controversy remains for adjudication in this court is without merit. He purged his contempt when, in accordance with the district court's command, he withdrew his version of the relinquishment of his medical license from the Florida disciplinary proceedings and reinstated the government-approved Voluntary Relinquishment. We therefore grant the government's motion to dismiss Zakharia's appeal of the contempt order as moot.

## VIII.

In conclusion, in Case No. 08-1266, we vacate the portion of Zakharia's sentence imposing costs in excess of the maximum $100,000 fine, and remand the case to the district court for resentencing in accordance with this opinion. We affirm Zakharia's sentence in all other respects. We dismiss Case No. 09-1219 as moot.