NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0264n.06

Case No. 20-5790

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CLINT DAVIS,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

FILED
Jun 02, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

BEFORE: GIBBONS, COOK, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge**. After Defendant Clint Davis pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), the district court sentenced him to 87 months imprisonment and fined him $15,000.00. Davis now appeals, contending his fine was procedurally and substantively unreasonable. For the following reasons, we **AFFIRM** the district court.

I.

On April 8, 2019, officers with the Lexington Police Department were conducting surveillance for suspected narcotics activities and observed a car pull into a parking lot of Fyre Entertainment, a music recording studio. The officers observed Davis exit the passenger side of the vehicle and enter the studio. Minutes later, Davis exited the studio and returned to the vehicle.

The officers followed the vehicle and initiated a traffic stop after observing multiple traffic violations.

According to Davis' Presentence Investigation Report ("PSR"), police officers searched the upper portion of the vehicle and located 7.5 Alprazolam two-milligram tablets, one oxycodone thirty-milligram tablet, and 7.5 grams of marijuana. After the officers searched the trunk of the vehicle, they found more than 400 grams of marijuana and a digital scale. A search of Davis' person revealed a stolen and loaded firearm and $2,871 in cash.

On October 3, 2019, Davis was indicted on two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Davis pled guilty to the first count, which stemmed from the April 8, 2019 traffic stop, and the district court sentenced him on June 26, 2020. The government dismissed the second count, and it is not part of this appeal.

According to the PSR, Davis had prior employment history in landscaping, lawn care, painting, drywall, and factory work, although he did not provide the probation office with the exact names of previous employers nor the dates he worked for them. The PSR also revealed that Davis claimed he was providing the mothers of his two children with financial support, despite not being court-ordered to do so. The PSR stated Davis' overall financial condition as follows:

> Davis denied having any assets and disclosed owing an unknown amount of medical debt as his sole liability. Following his incarceration, the defendant reported no monthly income with the exception of receiving gifts of approximately $100 per month towards his commissary account. A search of Accurint (via LexisNexis) did not identify any assets nor any additional liabilities affiliated with Davis. Based on the defendant's financial profile, it appears he has a limited ability to pay a fine.

At the sentencing hearing, one of the officers involved in the traffic stop testified that, at the time of the arrest, Davis had stated that the money in his possession was from construction and lawn services. However, Davis himself testified at the hearing that some of the money came from

his girlfriend, who he claimed had just cashed her tax refund. Davis denied that he received any of the cash from selling drugs and further testified that the purpose of having such a large sum of money in cash was that he was going to meet with a landlord the next day to pay for a rental home. Davis also explained that he was carrying a firearm because he had been "jumped" and robbed of approximately $1,000 two months earlier.

The district court found Davis' story to be flawed, explaining as follows:

> In this particular case, it does appear to me that Mr. Davis has attempted to provide different stories in terms of the source of the money that he possessed at the time of the arrest. Certainly, again, it would be an indication of drug trafficking activities, as would the denominations.

> His story about getting that sum of money in cash from an employer is, quite frankly, not believable. But it would also undercut information in the report about the -- his financial status, as would his testimony here today.

> If he was carrying a thousand dollars in February [2019], and he had this additional money at the time of the stop, I discount his testimony that it came from his, whatever he called her, I suppose his girlfriend, it will go more toward the fine in the case than it will toward the ultimate conclusion as to drug trafficking[.]

Davis' Guidelines imprisonment range was 70 to 87 months, and his fine range was $15,000 to $150,000. The government requested an 87-month prison sentence as "most appropriate" but also asked the district court to consider an upward variance "given the nature and circumstances of [] Davis' criminal history." Davis requested a middle-of-the-Guidelines sentence. Neither Davis nor the government specifically addressed whether a fine was appropriate.

Noting that Davis had been arrested more than 50 times, the district court explained that "there is a substantial likelihood that Mr. Davis would reoffend in the future, and therefore it is necessary to impose a sentence that will provide sufficient protection to the public as well as deterrence." The district court also examined the specifics of Davis' criminal history, observing that it included discharging firearms, driving under the influence, and assaultive behavior. Based

on these activities, the district court determined that Davis "present[s] a danger to the public as well as a danger to the law enforcement community, and it is necessary therefore to impose a sentence that will provide adequate deterrence, specific deterrence to this defendant and also to provide protection to the public." Considering these factors, the district court sentenced Davis to 87 months of incarceration to be followed by three years of supervised release.

In determining an appropriate fine, the district court considered the information presented in the PSR as well as the testimony during the sentencing hearing. The district court recognized that Davis "does not have any apparent resources," that a fine would place a burden on his dependents, and that Davis claimed to be providing the mothers of his two children with financial support. However, the district court explained that Davis was not under a legal obligation to provide the mothers with financial support. Moreover, the district court determined that Davis "has demonstrated an ability to work," is "able-bodied and [] will be able to pay a fine at the bottom of the fine range over time, if not almost immediately." Further, the district court noted that Davis was not required to pay restitution and that Davis would bear no collateral consequences in terms of civil obligations. The district court also explained that Davis had not been fined before despite his long criminal history and that the cost to the government during the term of Davis' imprisonment would outweigh the cost of the fine. Recognizing the need to adequately punish Davis and deter him from future criminal activity, the district court found that a bottom-of-the-Guidelines-range fine of $15,000 was thus "necessary and appropriate."

Davis then filed this timely appeal, contesting only the $15,000 fine.

## II.

We review whether a sentence was procedurally or substantively unreasonable under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). Where, as here, the

defendant preserves the issue for appeal, we "review[] the district court's imposition of a fine as a part of a defendant's sentence." *United States v. Blackwell*, 459 F.3d 739, 770 (6th Cir. 2006).

We review the district court's factual findings (such as the defendant's ability to pay a fine) for clear error and its legal conclusions *de novo*. *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007); *United States v. Stone*, 218 F. App'x 425, 439-40 (6th Cir. 2007). For a sentence to be procedurally reasonable, the district court must have "(1) properly calculated the applicable advisory Guidelines range; (2) considered the other [18 U.S.C.] § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range." *Bolds*, 511 F.3d at 581. In addition, a sentence "may be substantively unreasonable if the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011) (citing *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)). Sentences within the Guidelines are presumed reasonable. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

Specifically with regard to fines, the Guidelines provide that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." USSG § 5E1.2(a); *see also United States v. Kennedy*, 578 F. App'x 582, 595-96 (6th Cir. 2014). "'[I]n determining whether and to what extent to impose a fine, the district court must consider not only the § 3553(a) factors, but also the fine-specific factors set forth in 18 U.S.C. §§ 3571 and 3572, and USSG § 5E1.2(d).'" *United States v. Lumbard*, 706

F.3d 716, 726 (6th Cir. 2013) (quoting *United States v. Zakharia*, 418 F. App'x 414, 424 (6th Cir. 2011)). Those factors include:

> [The] defendant's income; earning capacity; financial resources; the burden on the defendant and his dependents; pecuniary loss inflicted on others as a result of the offense; whether restitution is ordered; the need to deprive the defendant of illegal gains; and the need to promote respect for the law, provide just punishment, and adequate deterrence.

*Id.* (quoting *United States v. Tosca*, 18 F.3d 1352, 1354 (6th Cir. 1994)). However, "we have never required detailed findings, only an indication that the court considered ability to pay and the other factors listed in the guideline." *United States v. Sydnor*, 762 F. App'x 284, 287 (6th Cir. 2019) (citing *Lumbard*, 706 F.3d at 727). The defendant carries the burden of showing that he does not have the present or future ability to pay a fine. *See United States v. Blanchard*, 9 F.3d 22, 25 (6th Cir. 1993) (citing 18 U.S.C. § 3664(d)).

III.

Davis contends that his within-Guidelines-range fine of $15,000 was procedurally and substantively unreasonable and that a fine in the range of $1,000-$3,000 "would have been proper."

**A. Procedural Unreasonableness**

Davis contends that the $15,000 fine was procedurally unreasonable because the district court erred in several of its factual findings regarding Davis' ability to pay the fine.

First, Davis contends that the district court erred by disregarding the fact that he was providing financial support to the mothers of his two children. This is a slight mischaracterization of the record. While it is true that the probation office stated in the PSR that Davis *claimed* he was providing the mothers with financial assistance, the district court's consideration of Davis' ability to pay the fine does not appear to have turned on whether Davis was actually making child support

payments but only on whether Davis was *legally obligated* to do so. Defense counsel even conceded this particular point at the sentencing hearing, noting that "[i]t is true that [Davis] is not court ordered to pay child support [and thus] does not have that legal obligation." Thus, whether Davis was actively making child support payments—or had made them in the past—was immaterial to the district court's analysis.

Second, Davis contends that the district court erroneously concluded that he "was a 'high roller' and could pay a [G]uideline range fine, all based upon his possession of cash in the amount of $3,800, combined, on two occasions."[1] To that end, Davis states that the district court's finding that he could pay a fine rested on one of two faulty theories—either that Davis regularly received large cash payments from his work in construction and lawn service or that Davis received the cash from the sale of drugs. This too is an inaccurate characterization of the record. The district court specifically cited Davis' explanation that he received the cash from an employer as "not believable" and that Davis' shifting explanations as to the source of the cash "would be an indication of drug trafficking activities, as would the denominations." The district court, however, did not justify the fine based on Davis' possession of the cash nor on any speculation as to how Davis might earn income in the future. Rather, the district court's comment about Davis being a "high roller" bore only on Davis' credibility as to the source of the cash—not on his ability to pay a fine.

Indeed, even recognizing the amount of cash Davis had in his possession, the district court acknowledged that Davis lacked "any apparent resources" and that a fine would place a burden on Davis and his dependents. Contrary to Davis' assertion, the district court never "base[d] [the] fine

---

[1] The district court never made specific reference to a $3,800 sum of cash. However, it appears from Davis' briefing that Davis is assuming that the district court arrived at the approximately $3,800 figure after adding together both the cash that Davis had on his person at the time of the April 8, 2019 traffic stop and the approximately $1,000 in cash that Davis claims was stolen from him two months earlier.

upon projected illegal income" from selling drugs. Rather, the district court's imposition of the fine rested on the simple fact that Davis would be able to pay the fine in the future because he will be able to gradually pay the fine while incarcerated and by working upon his release from prison.

Third, Davis contends that the district court failed to consider that he did not complete high school, which would affect his potential earning income upon release from prison. However, Davis has not explained how difficulty in finding a job because he does not have a high school diploma meets his burden of demonstrating that he will not be able to pay the fine in the future. *See Sydnor*, 762 F. App'x at 287 (upholding $15,000 fine when the defendant failed to "explain[] why he could not pay the fine slowly through prisoner pay and, after that, in installments"). Even if he might not have any current income, Davis admits that he has a GED, that "he has a future ability to pay a fine of some amount[,]" and "that he can earn money upon his release [from prison]." Moreover, "[c]urrent assets are not determinative of an ability to pay a fine." *Stone*, 218 F. App'x at 440 (citing *United States v. Perez*, 871 F.2d 45, 48 (6th Cir. 1989)).

For these reasons, we conclude that the district court's imposition of the fine was not procedurally unreasonable.

## B. Substantive Unreasonableness

Next, Davis asserts that the $15,000 fine was substantively unreasonable because it was "arbitrarily chosen based upon [his] possession of $3,800." Davis "agrees that the [d]istrict [c]ourt properly discussed the § 3553(a) factors" and instead focuses his substantive reasonableness argument solely on the amount of the fine. To this end, Davis contends that the district court relied upon an "impermissible factor" by assuming that he obtained the $3,800 by selling drugs and that the amount of cash Davis had with him indicated that he had the ability to pay a fine. However, as stated above, the district court's decision to impose the fine was based on Davis' ability to work

and earn legal income in the future, not on the amount of cash Davis had with him nor on any speculation as to his potential sources of future income. Accordingly, we reject Davis' argument that the fine was substantively unreasonable.

## C. Reduction of Fine

Finally, Davis contends that a fine between "$1,000 [and] $3,000 []" would have been proper," given that this Court has upheld similar below Guidelines fines in the past. In support of this argument, Davis cites *United States v. Martin*, 771 F. App'x 628, 633 (6th Cir. 2019), where we affirmed the district court's imposition of a $3,000 fine when the Guidelines range was $30,000-$250,000 and *United States v. May*, 430 F. App'x 520, 527‑29 (6th Cir. 2011), where we affirmed a $1,000 fine when the Guidelines range was $12,500-$125,000. However, Davis' reliance on those cases is misplaced. In neither of those cases did we state that the district court was *required* to issue a below-Guidelines fine to accommodate a defendant of limited means. Rather, in those cases, we merely upheld fines that the district court had already imposed. The fact that other district courts might have *acted within their discretion* to impose a different fine under different circumstances does not make the $15,000 fine on Davis in this case unreasonable. In other words, those cases do not set a ceiling on what constitutes a reasonable fine.

Although the district court imposed a relatively high fine considering Davis' apparently limited resources, "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51. Our review of the record confirms that the district court weighed the applicable factors and provided a reasoned basis for concluding that Davis has an ability to pay a fine at the bottom of his Guidelines range. Davis' assertion that a lower fine "would have been proper" amounts to nothing more than a suggestion that the district court should have balanced the applicable factors

differently.[2]  Such an argument is "simply beyond the scope of our appellate review."  *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (quoting *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006)).

In sum, the district court's consideration of Davis' ability to pay the $15,000 fine, and the reasons for imposing the fine, are sufficient to show that the district court did not abuse its discretion.

IV.

For the foregoing reasons, we **AFFIRM** the district court.

---

[2] If Davis is challenging the district court's weighing of the § 3553(a) factors, he has not explicitly presented that argument.  Moreover, any such argument would be internally inconsistent with his brief, in which, as noted above, Davis states that he "agrees that the [d]istrict [c]ourt properly discussed the § 3553(a) factors."  However, as a matter of caution, we do briefly note that the district court did properly weigh the § 3553(a) factors, citing the seriousness of Davis' offense, his long criminal history, the need to protect the public, the need to promote the rule of law, and the need to deter Davis from future criminal activities.  The district court based the sentence and fine on those factors, did not consider any improper factors, and did not place any undue weight on any one factor.  As such, we reject any argument by Davis that a lower fine is warranted based on the district court's balancing of the § 3553(a) factors.