*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0234p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

JUMAL GEORGE JONES,
  *Defendant-Appellant.*

No. 08-1352

————————————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 07-00190-001—Gordon J. Quist, District Judge.

Submitted: April 21, 2009

Decided and Filed: July 7, 2009

Before: BOGGS, Chief Judge; MOORE and SUTTON, Circuit Judges.

————————————

## COUNSEL

**ON BRIEF:** Daniel R. Fagan, DANIEL R. FAGAN & ASSOCIATES, P.C., Grand Rapids, Michigan, for Appellant. Jennifer L. McManus, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

MOORE, J., delivered the opinion of the court, in which SUTTON, J., joined. BOGGS, C. J. (pp. 9-11), delivered a separate opinion concurring in part and dissenting in part.

————————————

## OPINION

————————————

KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Jumal George Jones ("Jones") pleaded guilty to one count of possession with intent to distribute over fifty grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii), and one count of possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c). He now appeals the ten-year mandatory-minimum sentence imposed for

1

possession with intent to distribute over fifty grams of cocaine base. Jones argues that the ten-year sentence is so grossly disproportionate as applied to him that it amounts to cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution. Because we conclude that the ten-year sentence does not offend the "narrow proportionality principle" of *Harmelin v. Michigan*, 501 U.S. 957, 996-1009 (1991) (Kennedy, J., concurring), we **AFFIRM** Jones's sentence.

## I.  BACKGROUND

On November 1, 1996, officers from the Lansing, Michigan Police Department executed a search warrant at a residence in Lansing. Officers found Jones and six others inside, and a search of the residence recovered crack pipes, a digital scale, and packaging material. After Jones told officers that he had a gun in his pocket, a search of Jones recovered a loaded semiautomatic pistol with an obliterated serial number, $600 in cash, and the keys to a 1993 GMC minivan. During a search of the minivan, officers found a digital scale and 91.95 grams of crack cocaine. After being informed of his *Miranda* rights, Jones admitted that he and his younger brother had driven the minivan from Chicago to Lansing that day. He said that he had taken the gun, which he purchased on the street in Chicago, into the residence for protection because he believed it to be a crack house. Two witnesses told officers that they had purchased crack cocaine at the residence and understood Jones to be the residence's main supplier of crack cocaine. Although Jones denied any knowledge of the crack cocaine found in the minivan at the time, he later admitted that this had been his fifth trip from Chicago to Lansing to sell crack cocaine. After purchasing crack cocaine in Chicago, Jones traveled to Lansing to sell it and had made a total of some $12,500 in crack-cocaine sales. Presentence Investigation Report ("PSR") at 4-6.

On August 9, 2007, a grand jury returned a three-count indictment charging Jones in count one with possession with intent to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii), in count two with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and in count three with possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c). On December 5, 2007, Jones pleaded guilty to counts one and three pursuant to a written plea agreement. Under the plea agreement, the government agreed to dismiss count

two and not to file supplementary charges pursuant to 21 U.S.C. §§ 841(b)(1)(A)(iii) and 851 that could have resulted in a life sentence. The plea agreement also contained a waiver-of-appeal provision under which Jones "waive[d] the right to appeal any sentence which is at or below the maximum of the guideline range as determined by the Court," but still "retain[ed] the right to appeal a sentence above the guideline range." Plea Agreement ¶ 10.

The PSR held Jones responsible for 108.96 grams of cocaine base, based upon the 91.95 grams found in the minivan and application of a crack/cash conversion ratio to the $600 seized from Jones's person. The PSR calculated a total offense level of 27 and a criminal history category of I, resulting in a guideline range of between 70 and 87 months of imprisonment. However, the two counts to which Jones pleaded guilty carried statutory minimum terms of imprisonment: 120 months for possession with intent to distribute fifty grams or more of cocaine base pursuant to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii), and 60 months for possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c), to be served consecutively.

On February 28, 2008, Jones filed a sentencing memorandum. Jones stated that he "understood that [m]andatory [m]inimums have to be followed," but pointed out that were it not for the mandatory minimum his "guidelines range for Count I would be substantially less than the mandatory minimum he will be required to serve." Jones Sent. Mem. at 3. Noting that the district court had "its hands tied," Jones requested that the court sentence him "to the absolute minimum possible sentence allowed by statute." *Id.* Jones also expressed his hope that he would "have a chance in the future to be before [the district] court under a [Federal Rule of Criminal Procedure] 35(b) [motion] so that the excessive length of this mandatory sentence can be justly shortened." *Id.* at 4.

On March 4, 2008, the district court sentenced Jones to the mandatory-minimum sentences for both counts: 120 months for possession with intent to distribute fifty grams or more of cocaine base, and 60 months for possession of a firearm in furtherance of a drug-trafficking offense, to be served consecutively. Jones timely appealed.

On May 5, 2008, the government filed a motion to dismiss Jones's appeal, arguing that Jones had waived the right to appeal his sentence in the plea agreement. Jones filed a response on June 4, 2008. A motions panel of this court denied the motion to dismiss on

July 28, 2008, stating that "[t]he parties may address the waiver issues within the appellate briefs." *United States v. Jones*, No. 08-1352, slip op. at 2 (6th Cir. July 28, 2008) (unpublished order).

## II.  ANALYSIS

### A.  Appellate Waiver

We initially address the government's argument that Jones waived, via his plea agreement, the right to appeal the ten-year mandatory-minimum sentence imposed pursuant to 21 U.S.C. § 841(b)(1)(A)(iii).  "We review the question of whether a defendant waived his right to appeal his sentence in a valid plea agreement *de novo*."  *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005).  "[P]lea agreements are to be interpreted strictly, with ambiguities construed against the government."  *United States v. Caruthers*, 458 F.3d 459, 470 (6th Cir.), *cert. denied*, 549 U.S. 1088 (2006).

Under the plea agreement, Jones "waive[d] the right to appeal any sentence which is at or below the maximum of the guideline range as determined by the Court," but he "retaine[d] the right to appeal a sentence above the guideline range."  Plea Agreement ¶ 10. The government argues that Jones's "mandatory minimum sentence is not 'above' the guideline range; it is the guideline sentence."  Gov't Br. at 6.  In support of this argument, the government cites Guideline § 5G1.1(b), which provides that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."  U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 5G1.1(b) (2007).  The government essentially argues that because Jones's 180-month sentence is the "guideline sentence," it also constitutes the "guideline range" referenced in the plea agreement.  Jones counters that the waiver provision of the plea agreement does not apply because his statutory-minimum sentence of 180 months (120 months for the drug-trafficking count and 60 months for the § 924(c) count) is significantly above the applicable guideline range of 70 to 87 months determined by the district court.  Thus, Jones argues that the term "guideline range" in the plea agreement refers to the range of 70 to 87 months calculated by the district court before applying the statutory minimums, while the government contends that it means the mandatory-minimum sentence of 180 months.  We believe that § 5G1.1 is susceptible to two

reasonable interpretations, one of which favors the meaning of "guideline range" urged by Jones and one of which favors the meaning urged by the government.

First, § 5G1.1 reasonably may be construed to support the meaning of "guideline range" advanced by Jones. On this view, § 5G1.1 refers to two distinct concepts: the "applicable guideline range" and the "guideline sentence." The applicable "guideline range" is determined by the sentencing court based on the defendant's offense level and criminal history. When the statutory-minimum sentence is greater than the top of the guideline range calculated by the sentencing court, the statutory minimum effectively trumps the guideline range and becomes the "guideline sentence." U.S.S.G. § 5G1.1(b). Thus, § 5G1.1(b) contemplates a two-step process: first, the sentencing court must calculate the applicable guideline *range*; next, the sentencing court must determine whether the statutory minimum exceeds the top of the properly calculated guideline range. If the statutory minimum is greater than the top of the guideline range, the statutory minimum becomes the guideline *sentence*. On this reading of § 5G1.1(b), the guideline *range* does not become equivalent to, or merge into, the statutory minimum/guideline *sentence*.

The dissent offers another reasonable reading of § 5G1.1. In the dissent's view, when there is a mandatory minimum that is above the guideline range calculated by the sentencing court, that mandatory minimum, though a single point, becomes the "guideline range."

In light of these conflicting interpretations of "guideline range," we believe that the appeal waiver at issue in this case is ambiguous. This ambiguity is highlighted by the fact that other U.S. Attorneys' offices evidently employ appeal waivers that eliminate this ambiguity by requiring a defendant to waive his right to appeal unless the sentence exceeds the greater of either the guideline range *or* the mandatory minimum. *See, e.g.*, *United States v. Collins*, 264 F. App'x 513, 515 (7th Cir. 2008) (order) (appeal waiver requiring the defendant to waive any challenge to a sentence unless "the sentence imposed is in excess of the Sentencing Guidelines as determined by the Court (or any applicable statutory minimum, whichever is greater)"). We have repeatedly emphasized that ambiguities in plea agreements must be construed against the government. *See, e.g.*, *Caruthers*, 458 F.3d at 470; *United States v. Fitch*, 282 F.3d 364, 367-68 (6th Cir. 2002); *United States v. Johnson*, 979 F.2d

396, 399 (6th Cir. 1992). Given this principle, we conclude that the phrase "above the guideline range" in the plea agreement means above the guideline range of 70 to 87 months of imprisonment calculated by the district court before it applied the mandatory minimums. Accordingly, we hold that Jones has not waived his right to appeal the ten-year minimum sentence imposed pursuant to 21 U.S.C. § 841(b)(1)(A)(iii).

## B. Proportionality Review

Jones's sole argument on appeal is that the ten-year mandatory-minimum sentence imposed pursuant to 21 U.S.C. § 841(b)(1)(A)(iii) for possession with intent to distribute over fifty grams of cocaine base is so grossly disproportionate to the offense committed that, as applied to Jones, it amounts to cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution. "A constitutional challenge to a sentence is a question of law and reviewed *de novo*." *United States v. Marks*, 209 F.3d 577, 583 (6th Cir.), *cert. denied*, 531 U.S. 882 (2000).

We have adopted the "narrow proportionality principle" articulated in Justice Kennedy's opinion in *Harmelin v. Michigan*, 501 U.S. 957, 996-1009 (1991) (Kennedy, J., concurring). *See United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991).[1] "Under this approach, there is no requirement of strict proportionality; the eighth amendment is offended only by an extreme disparity between crime and sentence." *Id.* Applying the narrow proportionality principle, the controlling opinion in *Harmelin* upheld Michigan's penalty of a mandatory life sentence without the possibility of parole for possession of more than 650 grams of cocaine, even though the defendant had no prior felony convictions. *Harmelin*, 501 U.S. at 1009 (Kennedy, J., concurring).[2]

---

[1] In the context of determining "clearly established " law for purposes of 28 U.S.C. § 2254(d)(1), the Supreme Court has also focused upon Justice Kennedy's opinion in *Harmelin*. *See Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) ("[T]he only relevant clearly established law . . . is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring))).

[2] Although we have suggested in dicta that "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole," *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995), Justice Kennedy's opinion in *Harmelin* recognized the possibility that proportionality review could apply to invalidate a sentence for a term of years, 501 U.S. at 997-98 (Kennedy, J., concurring).

We previously have upheld against proportionality attack a mandatory sentence of life imprisonment without parole for a defendant convicted of conspiracy to distribute cocaine base who was held accountable for 177.8 grams of cocaine base. *United States v. Hill*, 30 F.3d 48, 49-50 (6th Cir.), *cert. denied*, 513 U.S. 943 (1994). Because it was the defendant's third felony-drug conviction, 21 U.S.C. § 841(b)(1)(A)(iii) provided for a mandatory life sentence without the possibility of parole. We applied the narrow proportionality principle of *Harmelin* and concluded that the defendant's "mandatory life sentence without parole was not so 'grossly disproportionate' to his crime as to violate the Eighth Amendment." *Id.* at 50.

In the instant case, Jones pleaded guilty to possession with intent to distribute fifty grams or more of cocaine base. Like the defendant in *Hill*, Jones was convicted of a drug-trafficking offense and was held accountable for a large amount of cocaine base (here 108.96 grams). Moreover, the mandatory life sentence that we upheld in *Hill* was a far more severe penalty than the ten-year sentence that Jones now challenges. Although Jones points out that his "history as an adult is relatively crime free" and that he scored just one criminal-history point, Jones Br. at 6, the Supreme Court in *Harmelin* upheld a mandatory life sentence for possession of 672 grams of cocaine despite the fact that the defendant had no prior felony convictions.

Applying the narrow proportionality principle of *Harmelin* and in light of our precedents, we cannot say that this case presents the kind of extreme disparity between the sentence imposed and the crime committed that would offend the Eighth Amendment. Because we conclude that the ten-year sentence is not grossly disproportionate to the offense committed, we do not conduct comparative analyses of the sentences imposed for the commission of the same crime within this jurisdiction or in other jurisdictions. *See Harmelin*, 501 U.S. at 1005 ("[I]ntrajurisdictional and interjurisdictional analyses are appropriate only in the rare care in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.").

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Jones's sentence.

---

## CONCURRING IN PART, DISSENTING IN PART

---

BOGGS, Chief Judge, concurring in part and dissenting in part. With respect to the merits of this appeal, I agree with the thorough analysis of the lead opinion that the sentence should be affirmed. However, I believe that we should not reach the merits of the appeal because Mr. Jones legally waived his right to appeal in the plea agreement and such agreements are enforceable. *See, e.g.*, *United States v. Gibney*, 519 F.3d 301, 306 (6th Cir. 2008); *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004) ("It is well settled that a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement.").

The plea agreement clearly states that Jones "waive[d] the right to appeal" if his sentence "is at or below the maximum of the guideline range as determined by the Court," but could appeal "a sentence above the guideline range." Jones was sentenced to what, all agree now, was the proper sentence under the guidelines. However, there might be two reasons that arguably would allow Jones to escape his clear and bargained-for waiver. The first of these is that, for technical reasons discussed below, his sentence, which fully complied with the guidelines, was indeed "above the guideline range" rather than "at or below the maximum of the guideline range." The second reason would be that, regardless of the language of the signed waiver, Jones did not in fact understand and agree knowingly to the waiver. The lead opinion relies only on the first basis, but I will address both, and explain why they do not vitiate the waiver.

The Guideline Architecture

In a common-sense manner, the guidelines establish a method for determining a range of possible sentences, from which the judge generally may chose a sentence. Thus, a common range might be 90-120 months, from which the judge could chose a particular specific sentence. However, the guidelines specifically contemplate that this "range" can be altered when required by statute as, for example, with a mandatory minimum or maximum sentence. The guidelines specifically state, at U.S. SENTENCING

GUIDELINES MANUAL ("U.S.S.G") § 5G1.1(b) (2007), that when the otherwise applicable range is impacted by such a restraint, the applicable "range" is now restricted so that the minimum of the range is the statutory minimum, or the maximum of the range is the statutory maximum.

Thus, if, in the above example, there were a mandatory minimum of 100 months, the "range" would become 100-120 months. Further, under the explicit language of this section, if the mandatory minimum were to be 120 months, the "range" would clearly be 120-120 months, or, in fact a single point. U.S.S.G. § 5G1.1(c)(2). *Gibney*, 519 F.3d at 303 (interpreting a plea agreement that said the defendant waived his right to appeal "a sentence of imprisonment within the applicable Guideline Range, but not less than any mandatory minimum sentence required by law."). I don't think there is any disagreement in the analysis thus far.

In the case of a mandatory minimum that is above the otherwise established "range," the guideline language simply says that the mandatory minimum *is* the guideline sentence. U.S.S.G. § 5G1.1(b). However, as just indicated, there is nothing anomalous with the approved "range" being a single point, and thus I see no dispositive significance in the use of "guideline sentence" rather than "guideline range" in also specifying a single point that is the appropriate sentence under the guidelines.

The general import of "range" in the guideline architecture is to specify all possible sentences that a judge can give without entering the areas of considerations of "departures from the guideline range" as governed by §§ 5K1.1-5K2.24 of the guidelines.

## Analysis of This Case

That is exactly what happened in this case. In fact, the normal sentence, available without engaging in the analysis required for a permissible departure, was the sentence that Jones actually received, 180 months. Thus, I believe that the judge's sentence did not trigger the "above the maximum of the guideline range" exception to Jones's waiver of his appeal rights.

The plea agreement signed by the defendant unambiguously indicates that he will be sentenced to a minimum of 180 months in prison. Plea Agreement ¶ 3 (noting that the statutory minimum sentence for violating 21 U.S.C. § 841(b)(1)(A)(iii) is a ten-year term of imprisonment and the statutory minimum sentence for violating 18 U.S.C. § 924(c) is a five-year term of imprisonment to run consecutive with any other sentence.).

In addition, the colloquy at the sentencing hearing, although initially complicated, thoroughly thrashed out and explained the required sentence. The defendant quite perspicaciously asked "but if it's a mandatory minimum, does that mean—that means he [the judge] has to stay at that amount?" and the judge clearly answers: "Yes." After some further discussion, the prosecutor stated: "[T]he judge is still subject to the mandatory minimum and he cannot, under the law, sentence you to anything under the mandatory minimum unless the government asks for the release of the mandatory minimum." The defendant responds "Right. Okay." His counsel also agrees and the defendant then says, in his own words: "So the judge is bound by the mandatory minimums regardless of anything else that's going on . . . ." The court then says again "[y]ou have agreed to . . . giving up your rights to appeal your sentence to a higher court. If [I] were to sentence you above the guidelines you continue to have your right to appeal to a higher court." And defendant specifically says that he understands and agrees to this.

As I read the transcript, this issue was thoroughly explored and defendant understood that the mandatory minimum operated as the guideline sentence, and I would not give him a second bite at the apple when the waiver of appeal was part of the bargained-for plea agreement. Thus, I agree with the ultimate outcome that Jones should get no relief, but I do so for the reason that I believe that we should enforce the appeal waiver.