**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1310n.06

**No. 11-6517**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

THOMAS D. SMITH,

     Petitioner-Appellee,

v.

JOHN HOWERTON, Warden,

     Respondent-Appellant.

_____ /

**FILED**

**Dec 27, 2012**

DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

BEFORE:     KEITH, CLAY, and ROGERS, Circuit Judges.

**CLAY, Circuit Judge.** In 1997, a Tennessee jury convicted Petitioner Thomas Smith of possession with intent to sell 1.4 grams of crack cocaine, in violation of Tenn. Code § 39-17-417. After exhausting his state-court remedies, Petitioner brought a petition for a writ of habeas corpus under 28 U.S.C. § 2254, claiming that his sixty-year sentence violated the Eighth Amendment's prohibition against sentences which are grossly disproportionate to his crime. The district court granted Petitioner habeas relief. Respondent John Howerton now appeals claiming that the state post-conviction court's denial of Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law. For the reasons set forth below, we agree with Respondent, and accordingly, we **REVERSE** the district court's issuance of a writ of habeas corpus as to Petitioner.

## BACKGROUND

A previous panel of this Court summarized the facts of the case and the state-court proceedings as follows:

> [Petitioner] Thomas Smith was arrested in Springfield, Tennessee, while sitting in a car parked at a housing project located within 1,000 feet of a local elementary school. At that time, he possessed 1.4 grams of crack cocaine that he admitted he hoped to sell in order to pay his utility bills. Pursuant to the provisions of Tennessee's Drug-Free School Zone Act, Tenn. Code Ann. § 39-17-432, the prosecution filed notice of its intent to seek the enhanced punishment allowed under the state legislation.
>
> At the conclusion of [P]etitioner's trial, the jury found Smith guilty of possession with intent to sell. Then, as noted by the Tennessee Court of Criminal Appeals:
>
>> The Drug-Free School Zone Act enhanced the class B felony offense to a class A felony for purposes of sentencing. Tenn. Code Ann. § 39-17-417(a)(4), (c)(1) (1996); Tenn. Code Ann. § 39-17-432(b). Additionally, the Act required Smith to serve the minimum sentence within his appropriate range prior to the operation of sentence reduction credits or eligibility for parole or early release due to overcrowding. Tenn. Code Ann. § 39-17-432(c)-(e). The State established at the sentencing hearing that Smith's criminal record included six class C felony, drug-related offenses, and one class B felony, drug-related offense. Accordingly, the trial court sentenced the appellant as a career offender who had committed a class A felony, Tenn.Code Ann. § 40-35-108(c) (1997), Tenn. Code Ann. § 40-35-112(c)(1) (1997), imposing a . . . day-for-day term of sixty years incarceration in the Tennessee Department of Correction.
>
> *State v. Smith*, 48 S.W.3d 159, 162 (Tenn. Crim. App. 2000).
>
> With the assistance of counsel, Smith filed a direct appeal to the Tennessee Court of Criminal Appeals [("TCCA")], challenging only the constitutionality of Tenn. Code Ann. § 39-17-432, the Drug-Free School Zone Act. In making that challenge, the petitioner argued, in part [that his sentence violated the Eighth Amendment's gross-disproportionality principle. The TCCA concluded that Petitioner's sentence did not violate the Eighth Amendment because it was not grossly disproportionate to the crime he committed, in light of, among other things, Petitioner's seven prior felonies and commission of the crime in a school zone.]

. . .

> Smith applied to the Tennessee Supreme Court for permission to appeal, again challenging the validity of Tenn. Code Ann. § 39-17-432 under both the State and federal constitutions. The court denied the application, however, and Smith, then acting *pro se*, timely petitioned the state trial court for post-conviction relief.
>
> In his post-conviction petition, Smith raised numerous issues, including . . . that [his] sentence was disproportionate to comparable crimes . . . . After a hearing, the court issued a brief order, granting Smith a new trial on the basis of the trial judge's failure to provide the jury with all jury charges in written form and failure to fully explain the law pursuant to a jury question request.
>
> The state appealed the trial court's grant of post-conviction relief to the [TCCA]. That court reversed the order, holding that the jury charge issue had been waived by the failure to pursue the objection at trial and preserve the issue for the direct appeal. *Smith v. State*, No. M2002-02181-CCA-R3-CD, 2003 WL 21946727, at *4 (Tenn. Crim. App. Aug.12, 2003). Still acting *pro se*, Smith followed that intermediate court decision with another application for permission to appeal to the state supreme court . . . . The Tennessee Supreme Court denied permission to appeal, effectively foreclosing the possibility of Smith's securing relief from the Tennessee state courts.

*Smith v. Morgan*, 371 F. App'x 575, 576–77 (6th Cir. 2010) (alterations and internal quotation marks omitted) (additional alterations indicated).

Petitioner, proceeding *pro se*, next filed for a writ of habeas corpus under 28 U.S.C. § 2254 in federal court. Relevant to this appeal, one of the claims in the petition was that Petitioner's sixty-year sentence violated the Eighth Amendment's gross-disproportionality principle. On that issue, the district court initially concluded that Petitioner had failed to exhaust state court remedies. *Smith v. Morgan*, No. 3:04-0775, 2005 WL 2290998, at *3 (M.D. Tenn. Sept. 20, 2005). This Court, on appeal, then determined that Petitioner had exhausted his state court remedies with respect to his gross-disproportionality claim and remanded to the district court for a merits determination. *Smith*, 371 F. App'x at 581–82.

On remand, the district court appointed Petitioner counsel and considered his gross-disproportionality claim. It held that the TCCA had erroneously concluded that there was no inference of gross-disproportionality raised by Petitioner's sentence. Specifically, the district court found that the TCCA "unreasonably evaluated the nature of Petitioner's offense," "unreasonably failed to consider the circumstances of Petitioner's crime," and "unreasonably relied on Petitioner's status as a career offender." Consequently, the district court concluded that a writ of habeas corpus should issue for Petitioner. Respondent John Howerton timely appealed.

## DISCUSSION

### A.    Standard of Review

On appeal of a district court's decision with respect to the issuance of a writ of habeas corpus, we review the district court's conclusions of law *de novo* and its factual findings for clear error. *Hanna v. Ishee*, 694 F.3d 596, 605 (6th Cir. 2012). Such review is, however, subject to the limitations set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *Id*. Under 28 U.S.C. § 2254(d), a petitioner may not obtain federal habeas corpus relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is contrary to clearly established Federal law if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law [or] . . . confronts

facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [the opposite result]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *accord Hanna*, 694 F.3d at 605. The relevant "clearly established Federal law" is the holdings of the Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. A state court decision is "an unreasonable application of [clearly established federal law]" if it either "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case" or makes an unreasonable determination as to whether or not to extend a legal principle from the Supreme Court's precedent to a new context. *Williams*, 529 U.S. at 407.

The Supreme Court has recently explained that "[f]or purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785 (2011) (emphasis in original) (internal quotation marks omitted). Further, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 786 (internal quotation marks omitted). Lastly, "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id*. (internal quotation marks omitted). This deference reflects the view that § 2254 is only to be used to "guard against extreme malfunctions in the state criminal justice systems." *Id*. (internal quotation marks omitted).

**B.      Applicable Law**

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The final clause prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284 (1983). This principle against gross disproportionality is deeply rooted and clearly established in this nation's jurisprudence. *See id.* at 284–86, 290; *see also Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) ("[O]ne governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years."). But due to the lack of clarity and precision with which the Supreme Court has applied the principle, *see Harmelin v. Michigan*, 501 U.S 957, 998 (1991) (Kennedy, J., concurring in part and concurring in the judgment), only the principle itself (and not any attendant framework) qualifies as "clearly established" for the purposes of the present habeas review under § 2254(d). *Andrade*, 538 U.S. at 73; *see also United States v. Jones*, 569 F.3d 569, 573 & nn.1–2 (6th Cir. 2009). Additionally, the Court has noted that the gross-disproportionality principle is "applicable only in the 'exceedingly rare' and 'extreme' case." *Andrade*, 538 U.S. at 73.

Because of the lack of clarity of the gross-disproportionality principle and because gross-disproportionality cases are inherently fact-specific, a review of the Supreme Court's cases in this area is useful before considering whether the TCCA's application of the principle was unreasonable.

In *Rummel v. Estelle*, 445 U.S. 263 (1980), the Supreme Court dealt with the Texas three-strikes law's applicability to a defendant who had two previous felony convictions—one for "fraudulent use of a credit card to obtain $80 in goods or services" and another for "passing a forged

check in the amount of $28.36." *Id*. at 265. Rummel was then convicted of felony theft for "obtaining $120.75 by false pretenses." *Id*. at 266. On the felony theft conviction, the sentencing court was forced to impose a life-term of imprisonment. *Id*. The Court began by noting that "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Id*. at 272. It discussed the difficulty of assessing, even on objective factors, how to distinguish between different crimes. *Id*. at 275–76. In the end, the Court determined that it need not get into such fine-grained distinctions because "the interest of the State . . . [was] not simply that of making criminal the unlawful acquisition of another person's property; it is . . . in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." *Id*. at 276. The Court also found important, in denying Rummel's challenge, the possibility of parole for Rummel in as few as twelve years. *Id*. at 280.

The Court's next case on proportionality in sentencing came in 1983 with *Solem v. Helm*.[1] In *Solem*, the Court again dealt with a recidivist. The petitioner had been convicted of "uttering a no account check for $100," 463 U.S. at 281, but had previously been convicted three times for "third-degree burglary" and once each for "obtaining money under false pretenses," "grand larceny," and "third-offense driving while intoxicated"—all six of which were felonies. *Id*. at 279–80. For

---

[1]In 1982, the Court—in a short, per curiam opinion—rejected a challenge by a Virginia defendant who had been sentenced to forty years for possessing "approximately nine ounces of marihuana and assorted drug paraphernalia." *See Hutto v. Davis*, 454 U.S. 370, 370, 374–75 (1982). *Davis*, however, did not engage in a very detailed analysis and therefore provides little to guide us.

this crime, the petitioner was sentenced to life in prison without the possibility of parole. *Id*. at 283.

To evaluate Helm's claim, the *Solem* Court used the following framework:

> [A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Id*. at 292. As to the assessment of the gravity of the crime, the Court noted again that objective criteria were necessary. To that end, it provided a non-exhaustive list of factors to consider: the "absolute magnitude of the crime," attempted versus completed crimes, negligent versus intentional conduct, and the "defendant's motive." *Id*. at 293.

In applying this framework to Helm, the Court remarked that his was "one of the most passive felonies a person could commit." *Id*. at 296 (internal quotation marks omitted). As to Helm's criminal history, the Court concluded that "a State is justified in punishing a recidivist more severely than it punishes a first offender. Helm's status, however, cannot be considered in the abstract. His prior offenses, although classified as felonies, were all relatively minor. All were nonviolent and none was a crime against a person." *Id*. at 296–97 (footnote omitted). Following both intra- and inter-jurisdictional analyses, it summarized its holding in this way: "Applying objective criteria, we find that Helm has received the penultimate sentence for relatively minor criminal conduct. . . . We conclude that his sentence is significantly disproportionate to his crime, and is therefore prohibited by the Eighth Amendment." *Id*. at 303.

However, the Court backed away from the *Solem* tripartite framework in *Harmelin v. Michigan*. A splintered majority in that case found a claim by a first-time offender who had been convicted of "possessing 672 grams of cocaine and sentenced to a mandatory term of life in prison

without possibility of parole" to be meritless. 501 U.S. at 961 (Scalia, J., announcing the judgment of the Court). Justice Kennedy's concurring opinion has been viewed as the most relevant by later courts. *See Andrade*, 538 U.S. at 73; *Jones*, 569 F.3d at 573 & nn.1–2. In that opinion, Justice Kennedy discussed four "common principles that give content to the uses and limits of proportionality review." *Harmelin*, 501 U.S. at 998 (Kennedy, J., concurring in part and concurring in the judgment). Specifically, they are "the primacy of the legislature [in determining the length of sentences], the variety of legitimate penological schemes, the nature of our federal system [with states as laboratories of democracy], and the requirement that proportionality review be guided by objective factors." *Id*. at 1001. Elaborating on the third principle, Justice Kennedy stated that "the circumstance that a State has the most severe punishment for a particular crime does not by itself render the punishment grossly disproportionate." *Id*. at 1000 (citing *Rummel*, 445 U.S. at 281). On the fourth principle, Justice Kennedy wrote: "[O]ur decisions recognize that we lack clear objective standards to distinguish between sentences for different terms of years." *Id* at 1001. As to the *Solem* framework, Justice Kennedy indicated that:

> *Solem* is best understood as holding that comparative analysis within and between jurisdictions is not always relevant to proportionality review. . . . A better reading of our cases leads to the conclusion that intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality. . . . The proper role for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime.

*Id*. at 1004–05.

The Supreme Court returned to the issue of gross disproportionality in 2003 with *Lockyer v. Andrade*.[2]  *Andrade*, like *Rummel*, dealt with a three-strikes law.  538 U.S. at 67.  Andrade was convicted of two counts of petty theft for stealing a total of about $150 worth of videotapes from two different stores.  *Id*. at 66.  Prior to those convictions, Andrade had been convicted of three felony burglaries.  *Id*. at 68.  The presence of the three prior felonies on Andrade's record triggered California's three-strikes law, and Andrade received two consecutive 25-year sentences.  *Id*.  On habeas, he argued that his fifty-year sentence was grossly disproportionate.  *Id*. at 70.  The Supreme Court determined that the gross-disproportionality principle "gives legislatures broad discretion to fashion a sentence that fits within [its scope]—the precise contours of which are unclear."  *Id*. at 76 (internal quotation marks omitted).  Under AEDPA, "these contours permitted [the California court's] affirmance of Andrade's sentence," and the Supreme Court denied him the writ.  *Id*. at 76–77 (internal quotation marks omitted).

## C.     Analysis

AEDPA review focuses on the decision of the state court—in this case, the TCCA.  In the TCCA's review of Petitioner's gross-disproportionality claim, it focused on three aspects of Petitioner's crime: (1) that it was a drug crime and the pervasive societal problems that drugs cause; (2) that it was done in a school zone and the need to protect children from criminal activity; and (3) Petitioner's lengthy criminal record of seven prior drug felonies.  *See State v. Smith*, 48 S.W.3d 159,

---

[2] To be sure, because *Andrade* post-dates the TCCA's decision in Petitioner's case, it does not qualify as "clearly established Federal law" under § 2254.  *Williams*, 529 U.S. at 412.  Nonetheless, *Andrade* is "instructive in assessing the reasonableness of a state court's resolution of an issue."  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).

171–73 (Tenn. Crim. App. 2000). Specifically, the TCCA first cited Justice Kennedy's discussion in *Harmelin* about the pervasive problem of drugs in society. *See id*. at 172 (citing *Harmelin*, 501 U.S. at 1002 (Kennedy, J., concurring in part and concurring in the judgment)). It then transitioned into a discussion of the school-zone enhancement. It noted that although Tennessee's act exacts harsh punishments for even small quantities of drugs, the harshness was "grounded upon the legislators' intimate knowledge of local conditions and the resulting desire to [protect students from crime.]" *Id*. (alterations and internal quotation marks omitted) (additional alterations indicated). The TCCA also cited to various courts that have upheld school-zone enhancements against various challenges. *Id*. Finally, the TCCA stated, "[T]he severity of [Smith's] punishment is the direct result not merely of an isolated instance of possession inside a school zone [but also derives from] . . . the State's interest 'in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.'" *Id*. at 172–73 (quoting *Rummel*, 445 U.S. at 276). In conclusion, the context of Petitioner's conduct made the TCCA "unwilling to conclude that [Smith's] sentence raises an inference of gross disproportionality." *Id*. at 173.

While the TCCA decision does discuss the broad context of Petitioner's crime, it does not fully account for some of the objective factors specific to Petitioner that would militate in favor of finding that the inference of gross disproportionality was raised in his case. First, the TCCA made scant mention of the very small quantity of drugs—1.4 grams of crack cocaine—that Petitioner was convicted of possessing. This is a very small amount (worth about $200), and although the Tennessee legislature clearly views drug crimes as serious ones, Petitioner's crime ranks at the low

end. Specifically, as compared to the crimes in *Rummel*, *Helm*, *Harmelin*, and *Andrade*, Petitioner's crime strikes us as more serious than Rummel's, Helm's, or Andrade's thefts and frauds but considerably less serious than Harmelin's significant drug possession. Additionally, Petitioner's motive—to make money to pay his electric bill—strikes us as not particularly harmful.

However, the TCCA does highlight some circumstances that undoubtedly help to explain the extreme sentence for such a small quantity of drugs. In light of the legislative primacy that "give[s] content to the uses and limits of proportionality review," *Harmelin*, 501 U.S. at 998 (Kennedy, J., concurring in part and concurring in the judgment), it very difficult to assail the Tennessee legislature's determination that those who conduct criminal activity in school zones ought to receive harsher punishments. As explained by the TCCA: "Children frequent school grounds outside the traditional classroom hours. . . . Accordingly, the instruments and transactions and subsequent use, such as needles and other paraphernalia, likely to be left at the school grounds present hazards and distractions to students at all times." *Smith*, 48 S.W.3d at 170 (citing *State v. Jenkins*, 15 S.W.3d 914, 918 (Tenn. Crim. App. 1999)).

Moreover, there is the matter of Petitioner's lengthy criminal record. *Solem* noted that a state's interest "in punishing a recidivist more severely than it punishes a first offender . . . cannot be considered in the abstract." 463 U.S. at 296. There, the Court found relevant that all of Helm's seven priors were "relatively minor" felonies and "[a]ll were nonviolent." *Id*. at 297. Similarly, Petitioner's crimes are all nonviolent, but as the district court pointed out, there are "inherent distinctions between . . . financial crime[s] . . . and drug crimes[, as] . . . society and lawmakers view drug crimes as inherently more grave and drug offenders as inherently more culpable." The

distinctions pointed out by the district court distinguish Petitioner from Helm in such a way as to militate against a finding of disproportionality.

On balance, if we were to consider the lengthy, mandatory sentence without the possibility of parole that Petitioner received for possessing a small amount of drugs with relatively inoffensive motive, we would find it difficult to say that sixty years was not grossly disproportionate to the crime committed. But that is not the task we are given under AEDPA review. In fact, the Supreme Court has consistently emphasized that "[f]or purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Richter*, 131 S. Ct. at 785 (emphasis in original) (internal quotation marks omitted); *see also Andrade*, 538 U.S. at 75–76 ("'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" (quoting *Williams*, 529 U.S. at 407)). Therefore, because of the vagueness of the gross-disproportionality principle and the admonition that the principle is "applicable only in the 'exceedingly rare' and 'extreme' case," *Andrade*, 538 U.S. at 73, we do not find that the TCCA's decision represents such an "extreme malfunction[] in the state criminal justice system[]" that fairminded jurists could not have come to it. *Richter*, 131 S. Ct. at 786 (internal quotation marks omitted).

As was the case in *Andrade*, AEDPA deference compels our conclusion. Similar to Andrade, who received fifty years without the possibility of parole for stealing $150 worth of videotapes, the circumstances of Petitioner's crime "implicate[] factors relevant in both *Rummel* and *Solem*" as well as *Harmelin*. *See Andrade*, 538 U.S. at 73. Additionally, "[t]he facts here fall in between the facts

[of cases the Supreme Court has previously encountered.]" *See id*. at 74. The imprecise "contours" of the gross-disproportionality principle gives state courts, like the TCCA here, more "leeway" due to the general nature of the rule. *Richter*, 131 S. Ct. at 786. Additionally, as in *Andrade*, "while this case resembles to some degree [the Supreme Court's previous cases], it is not materially indistinguishable from [any of them]." *See Andrade*, 538 U.S. at 74. Therefore, the TCCA reached a decision that was neither "contrary to [nor] . . . an unreasonable application of[] clearly established Federal law," 28 U.S.C. § 2254(d)(1), and accordingly, the district court erred in granting Petitioner a writ of habeas corpus.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's issuance of a writ of habeas corpus as to Petitioner.