NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0281n.06

No. 16-1731

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 19, 2017
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

TYLER JOHN LAFOND,

     Defendant-Appellant.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

BEFORE:    MERRITT, BATCHELDER, and CLAY, Circuit Judges.

**CLAY, Circuit Judge.**   Defendant Tyler LaFond appeals from the judgment and sentence entered by the district court on May 20, 2016, sentencing Defendant to a thirty-year mandatory minimum term of imprisonment for engaging in a sexual act with a person who has not attained the age of twelve years in a territorial jurisdiction of the United States in violation of 18 U.S.C. § 2241(c).

For the reasons that follow, we **AFFIRM** the district court's judgment and sentence.

## BACKGROUND

L. T. reported to the Federal Bureau of Investigation (FBI) that on May 2, 2015, her five-year-old daughter, M.A.M., informed her that Defendant had pulled down her underwear and touched her "pee-pee," and that Defendant then took out his "pee-pee" and rubbed it all over her. (R. 39, Presentence Investigation Report, Page ID # 82.)  M.A.M. was then forensically

interviewed by the FBI, and during this interview, M.A.M. confirmed that Defendant had committed these acts on her the previous summer while he was babysitting her and her younger sister. On June 18, 2015, the FBI interviewed Defendant at his home. Defendant told the investigators that he had touched M.A.M. last summer while he was babysitting her and her younger sister. He explained that while M.A.M. was sleeping, he went into her room, took off her underwear, inserted his finger into her vagina, and removed his finger when M.A.M. said "Ow." (*Id.*) He provided a written statement and a diagram of the extent of the digital penetration.

On August 12, 2015, a grand jury returned a two-count indictment against Defendant alleging: (1) that Defendant did knowingly engage in a sexual act with a child who had not yet attained the age of twelve years, in violation of 18 U.S.C. § 2241(c) ("Count One"); and (2) that Defendant did knowingly engage in and intentionally cause sexual contact with and by another person who had not yet attained the age of twelve years, in violation of 18 U.S.C. § 2244(a)(5), 2244(c), and 2241(c) ("Count Two"). The actions by Defendant occurred on land held in trust by the United States for the use of the Sault Ste. Marie Tribe of Chippewa Indians. On January 5, 2016, Defendant pleaded guilty to Count One without a plea agreement. The government agreed to dismiss Count Two at sentencing. On May 19, 2016, the district court sentenced Defendant to 360 months of imprisonment, the statutory mandatory minimum sentence under 18 U.S.C. § 2241(c).

## DISCUSSION

Defendant argues that the thirty-year mandatory minimum is grossly disproportionate to his offense, thereby violating the Eighth Amendment's prohibition against cruel and unusual punishment. Specifically, Defendant avers that the thirty-year sentence is grossly

disproportionate to the crime because he has no prior criminal history, he is a victim of sexual abuse himself, and he was barely eighteen years old when he committed the crime. Defendant argues that given the life expectancy in prison for individuals of his age and race, he will likely not live to see the end of his sentence. Defendant further argues that a juvenile defendant in a similar case received a three-year term of imprisonment, and thus, his sentence is grossly disproportionate given that he was barely eighteen years old at the time he committed the offense.

### 1. Standard of Review

"'A constitutional challenge to a sentence is a question of law and reviewed *de novo*.'" *United States v. Jones*, 569 F.3d 569, 573 (6th Cir. 2009) (quoting *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000)).

### 2. Relevant Legal Principles

The Eighth Amendment prohibits only "extreme sentences that are grossly disproportionate to the crime." *United States v. Graham*, 622 F.3d 445, 452 (6th Cir. 2010) (citation and internal quotation marks omitted). The Supreme Court has adopted a "narrow proportionality principle" when evaluating sentencing challenges under the Eighth Amendment. *Harmelin v. Michigan*, 501 U.S. 957, 997 (1991) (Kennedy, J., concurring in part and concurring in the judgment). Justice Kennedy explained that, "[t]he Eighth Amendment does not require strict proportionality between crime and sentence." *Id.* at 1001.

When "determining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime[,] [a] court must begin by comparing the gravity of the offense and the severity of the sentence." *Graham v. Florida*, 560 U.S. 48, 60 (2010) (citing *Harmelin*, 501 U.S. at 1005). "'[I]n the rare case in which [this] threshold comparison . . . leads to an inference

of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id*. (quoting *Harmelin*, 501 U.S. at 1005). "If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual." *Id*. (quoting *Harmelin*, 501 U.S. at 1005).

Criminal defendants challenging their sentences under the Eighth Amendment have a "tremendously difficult burden to meet." *United States v. Hughes*, 632 F.3d 956, 959 (6th Cir. 2011). The Supreme Court rarely strikes down non-capital sentences under the Eighth Amendment. *Solem v. Helm*, 463 U.S. 277 (1983), is an example of how egregious a non-capital sentence must be in order for it to be found unconstitutional. In *Solem*, the Supreme Court found a life sentence without the possibility of parole unconstitutional under the Eighth Amendment because the crime of uttering a "no account" check for $100 was grossly disproportionate to the sentence.

Conversely, in *Harmelin*, the Court upheld a mandatory life sentence without the possibility of parole for possession of more than 650 grams of cocaine where the defendant had no prior felony convictions. 501 U.S. at 961 (plurality opinion). The *Harmelin* Court not only recognized "that the Cruel and Unusual Punishments Clause encompasses a narrow proportionality principle" that applies to non-capital sentences, but also articulated "some common principles that give content to the uses and limits of proportionality review." *Id*. at 997−98.

"The first of these principles is that the fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is 'properly within the province of legislatures, not courts.'" *Id*. at 998 (quoting *Rummel v. Estelle*, 445 U.S. 263, 275−76 (1980)).

4

In other words, mandatory minimum prison terms determined by the legislature are not to be interfered with casually, and courts "should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *Solem*, 463 U.S. at 290. "The second principle is that the Eighth Amendment does not mandate adoption of any one penological theory." *Harmelin*, 501 U.S. at 999. The third principle is that the "marked divergences both in underlying theories of sentencing and in the length of prescribed prison terms are the inevitable, often beneficial, result of the federal structure." *Id*. The fourth principle "is that proportionality review by federal courts should be informed by objective factors to the maximum possible extent." *Id*. at 1000 (citation and internal quotation marks omitted).

These four principles—"the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors—inform the final one: The Eighth Amendment does not require strict proportionality between crime and sentence." *Id*. at 1001. Rather, the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id*. (citation omitted).

We have recognized the severity and seriousness of crimes involving the sexual exploitation and abuse of minors. *See United States v. Vowell*, 516 F.3d 503, 512−13 (6th Cir. 2008) (affirming district court's 65-year sentence for coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct, and for possession of child pornography because the "heinous nature of his crimes demonstrated the seriousness of the offense"); *United States v. Moore*, 916 F.2d 1131, 1139 (6th Cir. 1990) ("Child pornographers commit serious crimes which can have devastating effects upon society

and, most importantly, upon children who are sexually abused."); *United States v. Dobrowolski*, 406 F. App'x 11, 13, 2010 WL 4723779, at *2−3 (6th Cir. 2010) (affirming two 10-year mandatory minimum sentences imposed for coercing and enticing a minor to engage in illicit sexual conduct and for traveling in interstate commerce with the intent to engage in illicit sexual conduct because "in light of the seriousness of his offenses, . . . the crime is [not] so grossly disproportionate to the sentence").

In *United States v. Hughes*, we held that 18 U.S.C. § 2422(b)'s 10-year mandatory minimum sentence "for attempting to entice a minor into sexual relations raises no inference that it is 'grossly disproportionate.'" 632 F.3d at 959. Moreover, in *United States v. Hart*, 635 F.3d 850, 852 (6th Cir. 2011), we held that 18 U.S.C. § 2251's 15-year mandatory minimum term of imprisonment for attempting to persuade a minor to engage in "sexually explicit conduct for the purpose of producing visual depictions" of such conduct is not so grossly disproportionate as to violate the Eighth Amendment. Likewise, in *United States v. Farley*, 607 F.3d 1294, 1343 (11th Cir. 2010), the court held that the thirty-year mandatory minimum sentence for crossing a state line with intent to engage in a sexual act with a person under the age of twelve, in violation of 18 U.S.C. § 2241(c), does not violate the Eighth Amendment.

### 3. Analysis

In this case, Defendant's thirty-year mandatory minimum sentence for violating 18 U.S.C. § 2241(c) is not constitutionally disproportionate. In non-capital cases, "*successful* challenges to the proportionality of particular sentences are exceedingly rare." *Harmelin*, 501 U.S. at 1001 (internal quotation and brackets marks omitted). Such challenges are so rare that excluding the cases involving juvenile offenders, the Supreme Court has only found one non-capital sentence to violate the Eighth Amendment. *See Solem*, 463 U.S. at 280−81 (holding

sentence of life imprisonment without parole imposed on defendant who wrote a bad check for $100, and who committed other relatively minor, nonviolent offenses, violated the Eighth Amendment). Defendant's case is not one of those "exceedingly rare" circumstances in which his specified term of imprisonment violates the Eighth Amendment.

### A. Threshold Comparison of Crime Committed and Sentence Imposed

Starting with a threshold comparison of the crime committed and the sentence imposed, such a comparison does not lead to an inference of gross disproportionality. *See Harmelin*, 501 U.S. at 1004−05 ("A better reading of our cases leads to the conclusion that intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.").

Looking at the crimes and sentences at issue in *Harmelin* and *Farley*, it is clear that Defendant's crime is as bad as or worse than the crimes Harmelin and Farley committed. Harmelin was convicted of possessing 672 grams of cocaine and was sentenced to life imprisonment without parole. Farley was convicted under the same statute at issue in this case, 18 U.S.C. § 2241(c), for traveling across state lines with intent to sexually violate an underage child, and was sentenced to the same thirty-year mandatory minimum. *Farley*, 607 F.3d at 1344. Unlike Defendant, Farley "was unable to inflict that harm on an actual victim." *Id.*

Comparing Defendant's actions to Farley's and Harmelin's actions, Defendant's actions are significantly worse. Defendant did what Farley and Harmelin did not do: inflict injury on an actual victim. Thus, the crime involved in this case is exceptionally worse than the crimes committed in *Harmelin* and *Farley*. The argument for affirming Defendant's sentence in this case is stronger since Defendant inflicted harm on an actual victim. Turning to Defendant's

sentence, both the *Harmelin* Court and the *Farley* court looked at the harm caused by the type of crime involved in those cases in order to judge the seriousness of the crime. Defendant's sentence of thirty years is substantially less severe than the life-without-parole sentence Harmelin received, and which the Supreme Court upheld as constitutional. Defendant's thirty-year sentence is just as severe as Farley's thirty-year sentence even though Farley did not physically touch his victim.

The Supreme Court, this Court, and other courts have discussed in depth on many occasions the seriousness of crimes involving the sexual abuse of children and the extent of harm caused by those crimes. *See, e.g.*, *Kennedy v. Louisiana*, 554 U.S. 407, 413 (2008) ("Petitioner's crime [of raping his 8-year old stepdaughter] was one that cannot be recounted in these pages in a way sufficient to capture in full the hurt and horror inflicted on his victim or to convey the revulsion society, and the jury that represents it, sought to express by sentencing petitioner to death."); *id.* at 468 (Alito, J., dissenting, joined by Roberts, C.J., and Scalia and Thomas, JJ.) ("Long-term studies show that sexual abuse is 'grossly intrusive in the lives of children and is harmful to their normal psychological, emotional, and sexual development in ways which no just or humane society can tolerate.'"); *New York v. Ferber*, 458 U.S. 747, 758 n.9 (1982) ("It has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults."); *Vowell*, 516 F.3d at 512−13 (affirming district court's 65-year sentence for coercing a minor to engage in sexually explicit conduct and on child pornography charges because the "heinous nature of his crimes demonstrated the seriousness of the offense"); *Moore*, 916 F.2d at 1139 ("Child pornographers commit serious crimes which can have devastating effects upon society and, most importantly, upon children who are sexually abused."); *Farley*,

607 F.3d at 959−60 (upholding thirty-year mandatory minimum sentence under 18 U.S.C. § 2241(c) for crossing state line with intent to have sex with a child); *United States v. Eagle*, 515 F.3d 794, 799 (8th Cir. 2008) (explaining that an eight-year old boy who had been sexually assaulted "experienced mental, emotional, and physical problems[,] . . . and also experienced encopresis, or involuntary defecation."); *United States v. Nagel*, 559 F.3d 756, 761 (7th Cir. 2009) (highlighting that The Protection of Children from Sexual Predators Act of 1998 "evinces a congressional recognition of the seriousness of attempted sexual enticement of a minor").

### B. Defendant's "Juvenile Status" Argument

Defendant acknowledges the state of the law on the sexual abuse of children mentioned above. Instead of focusing on the cases involving adult offenders, he is essentially arguing that those cases should not apply to his case since he was barely an adult when the crime occurred. He argues that because he was three to six months into his eighteenth year when he committed the crime, he should be sentenced under juvenile sentencing guidelines rather than adult guidelines. Defendant points to a case out of the Western District of Michigan, *United States v. Suggitt*, Case No. 2:15-cr-18, where a juvenile in a similar situation as Defendant was sentenced to 36 months' imprisonment.

Defendant's "juvenile status" argument fails. The Supreme Court clearly articulated in its guiding principles that the courts should give substantial deference to the legislature's determinations regarding sentencing and punishment. The legislature demarcated adults as those eighteen and older. This determination is not something that the courts should casually interfere with. Notwithstanding, there is no compelling reason to interfere with such a determination in this case given the seriousness of Defendant's crime.

### C. Defendant's "Death Sentence" Argument

Additionally, Defendant claims that, based on data on the life expectancy for youth serving "natural" life sentences in Michigan, he is expected to live to only fifty given the age he was when he entered prison, his race, and the length of his sentence. Defendant thus argues that his thirty-year sentence is really a death sentence since he will be almost fifty years old when he is released from prison. Defendant uses this data to suggest that his thirty-year sentence is arguably a death sentence, and thus, unconstitutional under the Eighth Amendment.

Defendant's "death sentence" argument also falls short of persuading us. First, the thirty-year sentence is not a "death sentence." It is a thirty-year sentence which he started serving when he was nineteen years old. Defendant will be almost fifty years old when he is released and will have a significant portion of his life left to live. Second, the sentencing range for the offense Defendant committed was thirty years to life imprisonment. Defendant received the lowest possible sentence he could have received under the statute. Third, Defendant was charged as an adult because he was an adult when he committed the crime. The legislature chose eighteen as the age when individuals become adults. The sentence the juvenile defendant received in *Suggitt* is irrelevant to our analysis since that case involves a juvenile.

Because Defendant's sentence raises no inference of gross disproportionality, we do not need to conduct "intrajurisdictional and interjurisdictional analyses." *Harmelin*, 501 U.S. at 1005.

### 4. Summary

We hold that Defendant's thirty-year sentence pursuant to 18 U.S.C. § 2241(c) is not a violation of the Eighth Amendment. The severity of the crime compared with the sentence received does not raise an inference of grossly disproportionality which would offend the Eighth

Amendment's prohibition on cruel and unusual punishments. This is not one of those extraordinarily rare cases in which the sentence is grossly disproportionate to the crime.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the district court's judgment and sentence.

**MERRITT, Circuit Judge, concurring.** I agree with my colleagues that the Eighth Amendment, as currently interpreted by the Supreme Court, does not authorize us to deviate from the congressionally mandated 30-year sentence. But I also agree with Judge Edgar below that the sentence he had to impose is much too long. The only solution to the overly-long sentence that I can think of would be the reduction in the term of imprisonment as a result of a motion by the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A). I find no legal authority recognizing scientific studies and authority about where the line should be drawn in sentencing these young adults. But recent literature shows that the plasticity of the young adult brain (age 18-21) is almost as great as the child's brain. Clearly mandatory 30-year sentences should not be used. *See* Laurence Steinberg, *Age of Opportunity: Lessons from the New Science of Adolescence* (2015). A recent report by the MacArthur Foundation Research Network on Law and Neuroscience, *How Should Justice Policy Treat Young Offenders*? (February 2017) says:

> Young adults do commit a disproportionate amount of the nation's crime. In fact, arrests and recidivism peak in this age group. Yet we know relatively little about the developmental factors that may contribute to this phenomenon.

Judges should be given leeway in sentencing people like LaFond and not be bound by the straight-jacket that long, unjust mandatory minimums create.